## FARRAR & al. *versus* COOPER, *Executor.*

A conveyance of "the use of land forever," is equivalent to a conveyance of the land.

In a deed, granting part of a mill and of a mill site, within specified boundaries, an authorization to the grantee, in concurrence with the other part owners, to remove the mill and maintain it at any other spot within the boundaries, does not limit the grant to that of an easement only.

When land is conveyed, to be afterwards located within specified limits, the first rightful location upon the earth, determines forever its bounds.

A right, acquired by use, to maintain a dam, unimpeded by any dam below it on the same stream, may be lost by non user.

A non user of such a right for twenty years furnishes presumptive evidence of an extinction of the right by abandonment.

Such presumption, however, may be rebutted by proof.

Though, from the time of ceasing to use a mill privilege, twenty years may not have elapsed, prior to its being overflowed and destroyed by a dam below, still an abandonment of the privilege may be presumed, *if* its proprietor, *witnessing* the erection of the dam and of expensive works upon it, and *knowing* that it must destroy his privilege above, makes no effort or remonstrance to prevent it or claim of remuneration for it, *within the residue of the twenty years.*

A servitude is presumed to be extinguished, when the proprietor of the estate, charged with it, is permitted, for a sufficient length of time, to manage it in such manner as to preclude the exercise of the rights, arising out of that servitude.

The acceptance, within twenty years, of a deed granting a mill site, and reciting the existence of another mill site above it, does not estop the grantee from asserting the abandonment, by non user, of the upper site, unless the deed shows that the upper site had a right of priority in the use of the water.

TRESPASS ON THE CASE.

The parties agreed the facts, and thereupon submitted the case to the Court, with power to draw inferences as a jury might.

Of the facts thus agreed, the following particulars only are necessary for understanding the opinion of the Court.

In 1811, Samuel Greeley deeded to Joseph and James Carr the following real estate ; — the north-easterly half of a double saw-mill on Stillwater stream with the privilege of forever having and keeping a saw-mill on the same plat of ground on which that half of the mill stands, " or removed further up, further down, or further into the stream," as they and the proprietor of the other half should agree, provided no encroachment is made on the mills and privileges on the north-easterly end of the dam; also an undivided half of the dam and of the right to flow water thereby; also an undivided moiety forever of the privilege of a mill yard, one hundred feet square, adjoining said mill, appendant and appurtenant to, and best to accommodate said double saw-mill. In the deed, however, Greeley reserved and excepted the grist-mill, then connected with the double saw-mill, and also the right of keeping a single grist-mill there forever.

The land and privilege thus conveyed, was carved, by Greeley, out of a tract, owned by him and extending to a greater distance up and down the stream.

In 1817, the double mill and the dam, on which it stood, were swept away by the freshet, *and there have been no erections on the site of them since.*

In 1828, the part which Joseph Carr took under that deed, and also one half of the south-westerly half of the double mill site, with its half of the dam and other privileges, became vested in Jonathan Farrar. In June, 1833, Farrar conveyed his interest to R. M. N. Smyth, describing it as " one undivided half of a mill privilege, being the privilege for

one saw in the south-westerly part of the mill seat, called the Greeley mill, and the right and privilege of keeping and supporting one saw in any saw-mill to be erected on the premises," and half of the dam, mill yard, &c.

This estate, however, became afterwards, in 1843, revested in the heirs of Farrar, by a foreclosure of the mortgage, given by Smyth for the purchase money.

In July, 1833, Smyth, having purchased other portions of the Greeley tract, and of adjoining lands, conveyed to J. N. Cooper and A. Cooper, one undivided fourth part of a described territory, larger in extent, but embracing within its lines, the land which he had mortgaged to Farrar, "meaning to convey one undivided fourth part of all the mills, *seats*, rights, *privileges* and estates included within the lines aforesaid."

Other persons became owners of certain portions of the land referred to. Those persons and the Messrs. Cooper, in 1833 or 1834, jointly erected a dam, with valuable mills, upon said land, a few rods below the former site of the Greeley dam and mill, and across the same stream, by which dam that site was overflowed, and its privilege entirely destroyed.

Jonathan Farrar died prior to 1840, and the plaintiffs, being his heirs at law, commenced this suit, in 1847, to recover for the damage sustained by the destruction of said privilege.

James N. Cooper, against whom the suit was brought, has since deceased, and the defendant comes in as his executor.

Among the points presented by the defendant, it was insisted that the plaintiffs' rights had been lost by non user and abandonment.

*Cutting*, for the plaintiffs.

The defendant is estopped to set up an abandonment. Every deed up to 1833, under which his testator claimed, recognizes the existence of a mill site and of mill privileges, and conveys the premises, as such. Even Smyth's deed to Coopers in 1833 conveys "one undivided fourth part of all the mills, *seats*, rights, *privileges* and estates included within

the lines aforesaid." And it is not pretended that, within those lines, there were any mills or privileges, except the Greeley mill and the privileges pertaining to it.

But, if not estopped, the case shows no such abandonment.

Nothing short of a *non user* for twenty years shall be construed into an abandonment, *even prima facie. French* v. *Braintree Manufacturing Co.* 23 Pick. 219. *Arnold* v. *Stevens,* 24 Pick. 106.

In this case, the Greeley mill was in existence and in use till 1817. The acts now complained of were in 1833 or 1834, less than twenty years from the destruction of the Greeley mill and dam. The title in the plaintiffs did not become absolute until the mortgage of Smyth to Jonathan Farrar was fully foreclosed in 1843.

This suit, therefore, was commenced by the plaintiffs in four years from the acquisition of their title.

*Rowe & Bartlett,* for the defendant.

SHEPLEY, C. J. — This action on the case has been commenced to recover damages alleged to have been occasioned to a mill site by its having been overflowed by the erection of a dam, below it, on the same stream. The case is submitted upon an agreed statement of the facts.

It becomes important to ascertain in the first place, the character and extent of the estate, conveyed by Samuel Greeley to Joseph and James Carr.

A conveyance of a mill, or of a mill privilege, or of the privilege of a mill, will operate to convey the land occupied for the purpose, unless there be in the conveyance language indicating a different intention. *Blake* v. *Clark,* 6 Greenl. 436; *Moore* v. *Fletcher,* 16 Maine, 63; *Crosby* v. *Bradbury,* 20 Maine, 61.

By the deed from Greeley to the Carrs, one moiety of a double saw-mill is conveyed " with the privilege of forever having and keeping a saw-mill on the same plat of ground, whereon the same conveyed moiety now stands." If the words following in the deed were omitted, there could be

no doubt, that a moiety of the land, upon which the mill stood, would be conveyed; for a conveyance of the "use of land forever" is equivalent to a conveyance of the land.

The right, however, is conveyed of keeping a mill on the *same plat* of ground forever, "or removed further up, further down, or further into said stream, as the owner of the other moiety and the owner of the above moiety hereby conveyed, shall agree." It has been contended, that these words had the effect to restrict the conveyance to an easement or servitude in the land. The words afford no indication, that the land, upon which the mill then was or was to be erected, was not intended to be granted, for wherever the mill should be placed, the right to have a mill remain there forever was granted. The language might extend the bounds of the privilege conveyed, or render those bounds so uncertain, that the conveyance would be inoperative, but they would not change the character of the estate conveyed. There is another clause in the deed, conveying "also one undivided moiety forever of the privileges of a mill yard, one hundred feet square, adjoining said mill, *appendant* and *appurtenant* to, and best to accommodate said double saw mill." This language would convey a lot of land of those dimensions; and although such a lot does not appear to have been designated upon the earth at that time, it does appear to have been subsequently; and when the bounds were first established by the parties according to the terms of the grant, they became the unalterable bounds of the land conveyed for a mill yard, upon the well known rule, that when a grant of a certain quantity of land is made, to be thereafter located within certain limits, the first rightful location of it upon the earth, within those limits, determines forever its extent and bounds.

The bounds of the mill yard having been thus designated, as adjoining the mill, a construction of the deed, which would permit the mill to be removed so far up or down the stream as would remove it without the bounds of the mill yard, would be inadmissible. In addition to this consideration, there is not found in the deed any express authority to re-

move the dam then existing; and the grantor excepted and reserved the grist-mill, then connected with the saw-mill, and also "the right of keeping a single grist-mill there forever."

Opposed to these considerations, it is insisted, that as there was but one mill site on the whole lot then owned by Greeley, his grant of the mill and privilege would authorize his grantee to use that privilege, by erecting a dam and mills upon it, where they would be most convenient and useful. Greeley, before his conveyance, might indeed have erected a dam and mills, where the dam was subsequently erected, several rods lower upon the same stream, without affording just cause of complaint by the riparian proprietors above or below his mill site. But when he had conveyed a site, and so bounded and limited it, that it would not include the whole of the site owned by him, his grantee could not claim a right to occupy the site without the bounds of his own grant.

A construction which would permit this, from the use of the words "or removed further up or down or further into the stream," would prevent a conveyance of a mill site and mill yard having any definable bounds and thus annihilate the conveyance.

Those, who erected the existing dam and mills, would not therefore, by being part owners of the Greeley mill site, be authorized to erect a dam below that site, which would overflow and destroy it.

The next question presented is, whether the owners of the Greeley mill site have lost their right to the prior use of the water for the purpose of moving mill wheels, by their neglect to use it for that purpose.

Their right to have a dam remain there, uninjured by any one subsequently erected below it, could only be acquired by a prior occupation of the site and use of the water. A right acquired by use may be lost by non user. Such appears to have been the rule of the civil law, which was declared to be the common law by Bracton, and it has been repeatedly

recognized as such by judicial decisions. A non user of twenty years is regarded as presumptive evidence of an abandonment and extinction of the right. This presumption may be rebutted by proof of facts inconsistent with such a conclusion. The rule is not applicable to rights or incorporeal hereditaments, secured by a deed of conveyance.

By the agreed statement, it appears that " the Greeley mill and dam were swept away by a freshet in 1817, and there have been no erections on their site since." This language would be sufficient to show that these parties did not consider the existing dam and mills as standing on the Greeley mill site. This suit was commenced on April 2, 1847, but was not presented for the consideration of the Court prior to the last law term. It does not appear, that any of the owners of that mill ᴗsite, during those thirty years, made any attempt to occupy it or any complaint, that the riparian proprietors below it were making erections or using the water of the stream to the prejudice or injury of their rights.

The counsel for the plaintiffs insists, that the presumption arising from these facts is rebutted, or that the defendant's testator was estopped to set it up against them. The presumption, it is said, should not be regarded as existing, because the owners below erected, during the years 1833 and 1834, a dam which caused the water to flow back upon the Greeley mill site, thereby preventing an occupation of it subsequently. One tenant in common of a mill site, which has long remained unoccupied, sees that his co-tenants and others, owning land upon the stream below, are expending large sums of money in the improvement of their estate, in such a manner, that the effect must be to destroy his right to a prior use of the water above, without taking any measures to prevent it or to secure his rights, and without remonstrance, complaint or suit. Surely this conduct is rather suited to strengthen than to rebut the presumption of an abandonment.

A servitude is presumed to be extinguished, when the owner of the estate charged with it is permitted, without complaint or molestation, and for sufficient length of time, so

to manage his estate as to wholly prevent the exercise of the rights arising out of that servitude. By the application of this principle to the present case, it would seem, that a presumption of an abandonment might arise or be strengthened by such a use of the water below, as would effectually prevent its prior use at the Greeley mill site.

The conveyance from Robert M. N. Smyth to the Messrs. Cooper, made on July 16, 1833, describes a tract of land including the Greeley mill site, and it states, that the meaning is "to convey one undivided fourth part of all the mills, seats, rights, privileges, and estates included within the lines aforesaid." The conveyance made by Jonathan Farrar to Smyth, on June 20, 1833, describes the Greeley mill site as "an undivided half of a mill privilege," "being the privilege for one saw in the south-westerly part of the mill seat called the Greeley mill and the right and privilege of keeping and supporting one saw in any saw-mill to be erected on the premises."

By these and similar descriptions it is insisted, that the testator was estopped to deny, that the owners of that site had the rights appertaining to prior occupancy. The principle, upon which an estoppel rests, is, that one is not permitted to deny, what he has by a deed admitted to be true. If the testator could not be permitted to deny the existence of that mill site with the privileges and appurtenances therein described as connected with it, still among them the right of prior occupation is not enumerated or stated, as appurtenant to the site. These conveyances are all silent respecting such a right; and the testator by denying it would not be obliged to contradict any thing stated in them. By noticing the difference between a mill site entitled to a right of prior occupancy, and one, to which no such right is appurtenant, it will be perceived, that the conveyances make no statement, that the mill site conveyed is one, to which such a right is appurtenant, and that to deny it to have such a right does not contradict any fact admitted by the deeds.

The conclusion therefore must be, that the right of prior

occupancy and use of the water for the Greeley mill site had been abandoned and lost by lapse of time and non user before this suit was commenced.

WELLS, RICE and APPLETON, J. J. concurred.

HATHAWAY, J. also concurred in the result, though dissenting from the reasonings of the opinion.

*Plaintiff's nonsuit.*