## GAGE v. GAGE.

A tenant in common, who occupies or uses more than his share of the common property, is liable to his co-tenants, in some form of action, for a balance due from him to them on an equitable accounting.

ASSUMPSIT, for use and occupation. Facts found by a referee. The parties are brothers, and owners in common of the home farm of their father, who devised it to them, and who died in 1872. Since it became their property, a part of it has been used by both in common as pasture and wood land, and a small lot has been exclusively occupied by the plaintiff. With the plaintiff's knowledge, and without objection, the defendant has occupied the rest, and taken all the crops from it, except a small part taken by the plaintiff. The plaintiff was never excluded from occupying, or from taking the products. He has received all he asked for, or attempted to take. If the defendant is liable for rent (estimating the use and occupation at the rental value), there would be a balance of $612.42 due from the defendant to the plaintiff. There has never been any mutual understanding, or any promise on the defendant's part, that he would in any way make any compensation for his occupation of any part of the farm, or for his use of the plaintiff's undivided share. The referee finds, as matter of fact, that the defendant did not agree to pay the plaintiff for either past or future occupation, and also finds, so far as it is a matter of fact, that the defendant is not estopped to deny that he so agreed, and that the defendant has never made any actual contract, either verbal or tacit, to compensate the plaintiff, or to account for produce. If the defendant is to be held liable in this action, he must be so held upon a contract implied in law.

*W. G. Buxton* and *Bingham & Mitchell*, for the plaintiff, cited *Early* v. *Friend*, 16 Grat. 21, *Hayden* v. *Merrill*, 44 Vt. 336, *Hancock* v. *Day*, 1 M'Mull. Eq. 69, *Graham* v. *Pierce*, 19 Grat. 28, 38, *Borrell* v. *Borrell*, 33 Pa. St. 492, *Brooks* v. *Howison*, 63 N. H. 382, *Edsall* v. *Merrill*, 37 N. J. Eq. 114, 116, *Huff* v. *McDonald*, 22 Ga. 131, and *Holley* v. *Hawley*, 39 Vt. 525.

*D. Barnard* and *Chase & Streeter*, for the defendant, cited *Webster* v. *Calef*, 47 N. H. 289, 294, *Berry* v. *Whidden*, 62 N. H. 473, *Badger* v. *Holmes*, 6 Gray 118, *Peck* v. *Carpenter*, 7 Gray 283, *Sargent* v. *Parsons*, 12 Mass. 149, *Kean* v. *Connelly*, 25 Minn. 222, *Durrell* v. *Emery*, 64 N. H. 223, and *Sceva* v. *True*, 53 N. H. 627, 630, *et seq.*

BINGHAM, J. "There is a large class of contracts called implied contracts, which rest merely on construction of law, and in which

there is, properly speaking, no assent of the parties to the terms by which they are bound. What the law looks to in these cases is, not the agreement of the parties, but their circumstances or acts; and from their circumstances or acts the law raises the duty and implies the promise by which, in the individual case, the party will be bound. In the case of an express contract, the law measures the extent of each party's duty by the terms to which he has expressly agreed; in the case of an implied contract, the terms are such as reason and justice dictate in the particular case, and which therefore the law presumes that every man undertakes to perform." 1 Chit. Con. (11th ed.) 79. "If the forms of common-law actions were adapted to the truth of the case, a defendant could not be held liable in an action of contract except upon proof of an actual contract, either express or tacit. But by a fiction adopted for the sake of the remedy, the law in some instances allows an action of contract to be maintained to enforce a legal obligation or duty which the defendant has never in fact promised to perform. The law in such cases implies a promise, though such implication may be directly against the actual fact, and even against the party's strongest protestations." *Eastman* v. *Clark*, 53 N. H. 276, 280. The idea of a contract implied by law is a legal fiction, invented and used for the sake of the remedy, to enforce the performance of a legal duty. *Sceva* v. *True*, 53 N. H. 627; *Kelley* v. *Davis*, 49 N. H. 187; *In re Rhodes*, 44 Ch. D. 94. The invention of the fiction is an application of the general principle that requires such convenient procedure to be invented and used as is necessary to furnish complete remedies for the infringement of legal rights. *Boody* v. *Watson*, 64 N. H. 162, 171, 178, 179, and authorities there cited; *Haverhill Iron Works* v. *Hale*, 64 N. H. 406. If there is a legal obligation, there is a remedy in some form of action.

"It has been long settled, that if there are co-sureties  . . . . and the creditor calls upon either of them to pay the principal debt, or any part of it, that surety has a right in this court, either upon a principle of equity or upon contract, to call upon his co-surety for contribution; and I think that right is properly enough stated as depending rather upon a principle of equity than upon contract: unless in this sense, that the principle of equity being in its operation established, a contract may be inferred upon the implied knowledge of that principle by all persons, and it must be upon such a ground, of implied assumpsit, that in modern times courts of law have assumed a jurisdiction upon this subject." *Craythorne* v. *Swinburne*, 14 Ves. 160, 164.

In *Doe* v. *Morrell*, Smith (N. H.) 255, a house had been built as a single tenement, with "two rooms on the floor, chimney in the middle, entry front side the chimney, outside door, stairs up to the chambers," and a part of it had been set off on execution, the sheriff and appraisers making partition "by an imaginary line, running through the middle front door, entry, through the stairs,

chimney, &c." The plaintiff, deriving title from the levy, owned one part, and the defendant owned the other. The house was old, and the defendant's part became untenantable, was not worth repairing, and was condemned as dangerous by the fire-wards, who " ordered it to be repaired (or otherwise rendered not dangerous on account of fire)." The defendant " took down his part to the line, . . . carefully and prudently, doing as little damage to the plaintiff as he could. He . . . sawed through the plate, girt, stairs, boards, &c., but did not take down the chimney." The action was trespass, and the plaintiff recovered damages on the ground that " from the nature of the thing " the parties must be considered as interested in common in the entry, chimney, stairs, etc., and each " was under an obligation to the other to keep his part in repair, at least so far that the tenement of the other should suffer no injury from want of such repair." On each side of the boundary line there was a community of interest, created, not by contract, but by the common law. In respect to repairs, the community of interest included a mutual obligation and a correlative right; and for the enforcement of such an obligation and the maintenance of such a right, the common law of this state furnishes an adequate mode of procedure. If the defendant, instead of demolishing his part of the building, had merely refused to repair it, the plaintiff would have had a remedy in equity if not at law. *Roberts* v. *Peavey*, 27 N. H. 477, 502. Where several own a mill, mill-dam, or flume, in common or in severalty, when the privilege of the water is owned in common, there is an implied contract between them, running with the land, that each shall bear his portion of the expense of repairs. On this implied contract is founded the statute relating to the repairs of such property. *Runnels* v. *Bullen*, 2 N. H. 532, 538; G. L., *c.* 141; *Fowler* v. *Fowler*, 50 Conn. 256, 257.

In *Campbell* v. *Mesier*, 4 Johns. Ch. 334, there was a decree in favor of an owner of a city lot against the owner of an adjoining lot, compelling contribution to defray part of the cost of a party-wall built by the plaintiff in place of an old and ruinous one which he had pulled down. It was alleged in the bill that he had been nonsuited, in an action at law brought for the same purpose, on the ground that he had no remedy at law. In the opinion, Chancellor *Kent* says,—" This case falls within the reason and equity of the doctrine of contribution which exists in the common law, and is bottomed and fixed on general principles of justice. . . . The doctrine rests on the principle, that where the parties stand in *equali jure*, the law requires equality, which is equity, and one of them shall not be obliged to bear the burthen in ease of the rest. It is stated in F. N. B. 162 b, that the writ of contribution lies where there are tenants in common, or who jointly hold a mill, *pro indiviso*, and take the profits equally, and the mill falls into decay, and one of them will not repair the mill. The form of a writ is given, to compel the others to be contributory to the reparations.

.   .   .   The doctrine of contribution is founded, not on contract, but on the principle that equality of burden, as to a common right, is equity.   .   .   .   In the case before me, the parties had equality of right and interest in the party-wall, and it became absolutely necessary to have it rebuilt.   .   .   .   Contribution depends rather upon a principle of equity than upon contract.   The obligation arises, not from agreement, but from the nature of the relation, or *quasi ex contractu ;* and as far as courts of law have, in modern times, assumed jurisdiction upon this subject, it is, as Lord *Eldon* said (14 Ves. 164), upon the ground of an implied assumpsit.   The decision at law, stated in the pleadings, may therefore have arisen from the difficulty of deducing a valid contract from the case. That difficulty does not exist in this court, because we do not look to a contract, but to the equity of the case.   .   .   .   The houses on each side   .   .   .   were old and almost untenable ; and it would be the height of injustice to deny to the plaintiff the right of pulling down such a common wall, and of erecting a new one suitable to the value of the lot in the most crowded part of a commercial city.   It would be equally unjust to oblige him to do it at his exclusive expense, when the lot of the defendant was equally benefited by the erection and much enhanced in value."

" The second diversity," says Coke, " is between chattels real that are apportionable or severable, as leases for years   .   .   . and chattels real entire, as wardships of the body, a villeine for years, &c. ; for if one tenant in common take away the ward, or the villeine, &c., the other hath no remedy by action, but he may take them again.   Another diversity is between chattels real and chattels personal ; for if one tenant in common take all the chattels personal, the other hath no remedy by action, but he may take them again.   .   .   .   If two tenants in common be of a dovehouse, and the one destroy the old doves, whereby the flight is wholly lost, the other tenant in common shall have an action of trespass ; for the whole flight is destroyed, and therefore he (the defendant) cannot in bar plead tenancy in common.   .   .   .   If two tenants in common, or joint tenants, be of a house or mill, and it fall in decay, and the one is willing to repair the same and the other will not, he that is willing shall have a writ *de reparatione facienda ;*   .   .   .   Whereby it appeareth that owners are bound in that case *pro bono publico* to maintain houses and mills which are for habitation and use of men.   If one joint tenant or tenant in common of land maketh his companion his bailiff of his part, he shall have an action of account against him.   .   .   .   But although one tenant in common or joint tenant, without being made bailiff, take the whole profits, no action of account lieth against him ; for in an action of account he must charge him either as a guardian, bailiff, or receiver.   .   .   .   Never his bailiff to render an account is a good plea."   Co. Lit. 200 a, 200 b.   In the section of Littleton, on which this comment is made, it is said,—

"If two be possessed of chattels personal in common . . . , as of a horse, an ox, or a cow, &c., if the one take the whole to himself out of the possession of the other, the other hath no other remedy but to take this from him who hath done to him the wrong to occupy in common, &c., when he can see his time, &c. In the same manner it is of chattels real which cannot be severed. . . . Where two be possessed of the wardship of the body of an infant within age, if the one taketh the infant out of the possession of the other, the other hath no remedy by an action by the law but to take the infant out of the possession of the other when he sees his time."

"Other harsh and repulsive doctrines, as well as the feudal tenure of land (*Cole* v. *Lake Co.*, 54 N. H. 242, 279, 285, 286), growing out of social conditions that have ceased, and incompatible with the increase of trade, productive industry, and personal estate, have become obsolete." *Brooks* v. *Howison*, 63 N. H. 382, 386, 387. At the present day, the practice of snatching an infant ward by each of several guardians when he could see his time would not be tolerated. By a division of time (as in some cases of real estate—*Chesley* v. *Thompson*, 3 N. H. 9), or by some other temporary or permanent regulation consistent with the interest of the ward (*State* v. *Libbey*, 44 N. H. 321), the evils that formerly attended a lack of specific remedy by legal process could be averted without a dissolution of the common right. The condition of a ward living in constant expectation of capture and recapture, is not a necessary incident of wardship possessed by two. When there is a common right of possession of a person or chattel, and possession is taken by one, "the other," says Littleton, "hath no remedy by an action by the law"—"no other remedy but to take this from him who hath done to him the wrong." This is the obsolete doctrine of a right and a wrong without a remedy by legal process. No writ was invented for such a case, or if invented its use was not allowed. The great mass of remedies was of common-law judicial origin; the rejection of necessary forms of action was arbitrary and capricious. In effect, a denial of remedy was so far equivalent to a denial of title that in the course of time what was characterized by Littleton as the infliction of a remediless wrong was not distinguished, by terms of due qualification, from an exercise of a right.

In the case of a chattel or land owned in common and held by one of the owners, there was special need of an appropriate writ. The refusal of a remedy by action tends to disorder. "The common law, which is the preserver of the common peace of the land, did abhor all force as a capital enemy to it; and therefore, against those who committed any force, the common law did subject their bodies to imprisonment." *Harbert's Case*, 3 Co. 11, 12. In many cases, reasonable force without legal process is a necessary legal remedy. *Haley* v. *Colcord*, 59 N. H. 7, 8, 9. But holding it to

be the only remedy for a use of common property by one of the owners, gives unnecessary occasion for proceedings likely to end in acts of violence.    If a specific regulation of the exercise of common rights of possession and use.cannot be made in a suit at law, there are cases in which the parties are entitled to it in chancery.    *Conn. River Lumber Co.* v. *Olcott Falls Co.*, 65 N. H. 290, 390.  Under an equitable right of amendment, the question whether relief should be sought at law or in equity has lost much of its importance.    In cases like the present, no specific regulation is necessary.    An action of assumpsit, or case, to recover for the defendant's use of the plaintiff's property *quantum valebat*, would be convenient, and is necessary unless compensation is given in equity.   Such an action, and the right of partition by sale or otherwise, would ordinarily be sufficient.   Partition alone is not enough.   It provides for the future, but leaves the past unsettled.   If there were an expulsion, it was said that mesne profits were not recoverable in ejectment.   Co. Lit. 199 b.   The plaintiff's right to take possession and hold the land, or cut wood and gather the crops, until he had taken enough of the defendant's property to pay for the defendant's use of the plaintiff's, might be inadequate.   Before the account could be balanced in that way the defendant might obtain partition.   Taking payment by using the defendant's property without his consent is not the only remedy in a well regulated community, where the law permits the use of convenient procedure instead of restricting the injured party to such compensation as he may be able to get without a suit.

When a flock of doves, owned in common by two, was destroyed by one of the owners, the wrong was considered actionable for a reason based on the distinction between right and remedy.   The injured party could maintain trespass because he was no longer a tenant in common.   This explanation was satisfactory when his remedies were limited to the use of procedure that had been invented at an earlier day.   Writs had not been invented for all cases in which his rights could be infringed by his co-tenant without a termination of the co-tenancy, but only for some of those cases. If a legal right would be violated by a refusal to account for the use and occupation of a house or mill owned in common by the occupier and another, the invention of a fiction, or a writ, or some other remedial measure, in such a case, was as indispensable as in the case of the same occupier's refusal to contribute to necessary repairs of the same property.   The obligation to repair does not arise from contract, or from the court's opinion that the public good requires houses and mills to be kept in a condition fit for use, but from the nature and necessity of the case.   Tenancy in common of a farm and live-stock naturally and necessarily includes a common duty of reasonably protecting the common interest.   The house or barn is not to go to ruin for want of repairs which a prudent owner would make; the cattle are not to be starved; the land is not to

be sold for taxes (*Eads* v. *Retherford*, 114 Ind. 273); and one of the owners is not to gain by throwing upon his co-tenant all the proper and inevitable expenses of ownership. In the absence of contract, express and tacit, their mutual rights and duties are comprehended in the relation of trust and confidence which is inherent in the undivided character of their interests.

The rights of these parties, growing out of the situation of the property and the nature of their estate, are so completely equitable that the defendant's conveyance of a divided half of the farm to a third person might operate as a partition, if it did not injuriously affect the plaintiff's right of division, or any of the other rights of which his title is composed. *Holbrook* v. *Bowman*, 62 N. H. 313, 321. If they were owners in common of a bushel of corn, a just partition could be made by either, without a suit, against the other's objection. *Haley* v. *Colcord*, 59 N. H. 7, 8. If the defendant had occupied the east half of the farm and given the plaintiff an opportunity to occupy or let the west half, and if such a division of the use would have been equal in every respect, but the plaintiff had chosen to leave the west half unoccupied, there would have been a question which the case does not present. *Hayden* v. *Merrill*, 44 Vt. 336, 347, 348. "The plaintiff cannot make his own omission to occupy the joint estate a ground of action against his co-tenant." *Badger* v. *Holmes*, 6 Gray 118, 120. The plaintiff's right to the balance found due him does not arise from his omission to occupy half of the land, but from the defendant's use and occupation of more than half. The defendant is bound to account, but not inequitably. The burden is on the plaintiff to show that, under all the circumstances of the case, upon a just accounting by him and the defendant, there is a balance due him from the defendant. Their community of title is an aggregate of many equities of which the right to an account is one. No injustice is done in the allowance of interest (*Thompson* v. *Railroad*, 58 N. H. 524), or costs. *Bartlett* v. *Hodgdon*, 44 N. H. 472; *Smith* v. *Boynton*, 44 N. H. 529; *Whitcher* v. *Benton*, 50 N. H. 25; *Olcott* v. *Thompson*, 59 N. H. 154, 157.

"So intimate is the relation of co-tenants that one cannot acquire by purchase an adverse and superior title and set it up in opposition to his co-tenants, unless they refuse to contribute their share of the expense of procuring the paramount title. The title is held to be acquired by one for the benefit of all." Tied. R. P., s. 252; Cool. Tax. 467, 501, 502; *Barker* v. *Jones*, 62 N. H. 497. The rule is "based on a community of interest in a common title, which created such a relation of trust and confidence between the parties that it would be inequitable to permit one of them to do anything to the prejudice of the other, in reference to the property so situated." *Rothwell* v. *Dewees*, 2 Black 613, 619. "Community of interest produces a community of duty." *Van Horne* v. *Fonda*, 5 Johns. Ch. 388, 407. "A tenant in common

holds a several interest in the lands, which is so far identical with his co-tenants' interest that, in all matters affecting the estate, he will be regarded as acting for them as well as himself." *Weare* v. *Van Meter*, 42 Iowa 128, 129. Had these views been entertained in former times as distinctly and broadly as they are now, it is not apparent how an occupying tenant in common, regarded as acting for his co-tenants as well as for himself, could have been exempted from an equitable liability for his fiduciary use of their property. If, in any view of rights or remedies, he is not chargeable as bailiff in an action of account, there is no more difficulty in inventing a writ, or the fiction of an implied promise in assumpsit, than in the introduction of a new form of action for a remainder-man in *Walker* v. *Walker*, 63 N. H. 321. If the relation of trust, as a ground of obligation, were held to render an action at law inappropriate or inadequate, no objection could be made to the jurisdiction of equity.

The only question of any substantial importance in the present case is, whether an obligation of each owner to account was a part of the community of duty produced by their community of interest. It was not the defendant's duty to take or hold possession of the farm, or any part of it. But its possession was one of the matters affecting the common interest, in which, when he acted, it was his duty to act for the plaintiff as well as for himself. If he had evicted the plaintiff, and held adverse possession, he would have been liable in trespass for his use of the plaintiff's property. As there was no eviction, and his possession was the plaintiff's possession, in other words, as in living on the farm, cutting wood, and taking the crops, he acted for the plaintiff as well as for himself, he would not have acquired the plaintiff's title by twenty years' use and occupation. *Campbell* v. *Campbell*, 13 N. H. 483. For the same reason he was bound to account.

"Tenants in common are persons who hold by unity of possession. . . . The possession of one . . . is the possession of the other, and the taking of the whole profits by one does not amount to an ouster of his companions. . . . One . . . cannot bring an action of trespass against another for entry upon and enjoyment of the common property." 4 Kent. Com. 367, 370. If mere entry and possession by the plaintiff or the defendant had been a trespass, their farm could not have been rightfully cultivated without an agreement. No agreement was necessary. The defendant's right to use his undivided share necessarily comprised a right to use property that belonged to the plaintiff. He could not enter without going upon the land of both. He could not cut and consume wood or hay without converting to his own use something that belonged in part to the plaintiff. His right to use what was not his, and his obligation to account, were incidents of their community of interest. So far as he exercised the plaintiff's right of use and conversion, he acted for the plaintiff in

matters affecting the undivided estate.  His appropriation of the plaintiff's property to his own use was not wrongful; and in the absence of contract, gift, and release, it could not be rightful unless he acted in a fiduciary capacity that involved an equitable liability to account for his exercise of the plaintiff's right.  In using the plaintiff's property without such a liability and without a power derived from contract, gift, or release, he would not act for the plaintiff, nor in furtherance of the plaintiff's interest, but against him, and to his prejudice.

It was in reference to the duty of contribution resulting from the doctrine of equality applied to such relations as those existing between tenants in common that Lord *Coke* declared the common law to be the perfection of reason.  *Harbert's Case*, 3 Co. 11, 13, 14; *Campbell* v. *Mesier*, 4 Johns. Ch. 334, 338.  The rule of equality compels the plaintiff to bear his share of necessary expenses incurred by the defendant in making repairs, paying taxes, and removing incumbrances.  In the adjustment of such claims, the plaintiff would be credited with the defendant's use of the plaintiff's property preserved by those expenses; and the defendant's obligation to account cannot depend on his having claims against the plaintiff.  The theory that he acted for the plaintiff as well as for himself in such matters affecting the common estate as repairs, taxes, and incumbrances, and so far acted for the plaintiff in occupying and using the same estate as to make his possession of the plaintiff's undivided half the plaintiff's possession, and avoid liability in an action of trespass, but so far acted against the plaintiff in the same occupation and use as to avoid accountability in every other form of action, is inconsistent with a system of law founded on reason.  The plaintiff's claim, not being defeated, as it formerly would have been, by a lack of remedy, cannot be disallowed without denying that one half of the farm was his property, and holding that the defendant owned the whole.

" Tenancy in common is a joint estate in which there is unity of possession, but separate and distinct titles.  The tenants have separate and independent freeholds or leaseholds in their respective shares, which they manage and dispose of as freely as if the estate was one in severalty.  There is no restriction upon their power of alienation.  And the tenant may dispose of it by will, while the heirs of an intestate tenant will inherit the estate.  In like manner, the husband or wife of a tenant in common will have, respectively, curtesy and dower. . . .   The interest of one tenant in common is so independent of that of his co-tenant that in a joint conveyance of the estate it would be treated as a grant by each of his own share in the estate.  And . . . in order to convey the share of one co-tenant to another, the same formal deed is required as in a conveyance of it to a stranger. . . . Tenants in common are not seized of the entire estate.  They do not hold it *per my et per tout*."  If repairs are necessary to

prevent the property from going to decay, one "may either compel
the others to join him in making the repairs, or, if he has notified
them that repairs are necessary, bring an action against them for
their share of the expenses. If one tenant cuts timber upon the
land, and sells it, the co-tenants are entitled to their share of the
money so received. And so also would he be liable to account for
rents, received by him from the tenant of the land, over and above
his share. But in order that a co-tenant may be held personally
liable for rent through his own use and occupation of the land, a
special agreement to that effect must be shown. An occupancy
by one co-tenant, without the interference of the others is not suf-
ficient. He is merely exercising his right of ownership." Tied.
R. P., ss. 239, 254, 255.

The proposition that the defendant merely exercised his right of
ownership is not a denial of the plaintiff's title. The defendant's
ownership included a right to exercise the plaintiff's right of
occupation and use. His exercise of the plaintiff's right being
lawful, he is not liable as a trespasser. It was lawful because, in
its legal character, it was fiduciary,—he acted for the plaintiff;
therefore he is liable as the plaintiff's representative. To say that
his occupancy was not an exercise of the plaintiff's right as well as
his own would be either a denial of the plaintiff's title, or an
admission that there was an infringement of the plaintiff's right
for which there must be a remedy. On the general question of
liability in some form of action, it is not material whether the
defendant exercised the plaintiff's right or violated it. "The
name of property belongs to some of the essential proprietary
rights vested in the person called the owner of the soil. . . .
Property is taken when any one of those proprietary rights is
taken of which property consists." *Thompson* v. *Androscoggin
R. I. Co.*, 54 N. H. 545, 552. If a railroad or other highway were
laid out across the Gage farm, the public would only take a right
of use. The fee of one half would remain in the plaintiff; but he
would be entitled to compensation. By the defendant's use of the
farm the plaintiff's property was taken, as it would have been if
the defendant had acted as the state's superintendent in carrying
on the farm for the purposes of a public school of agriculture.
The defendant's power, as co-tenant, to take what did not belong
to him, like the power of eminent domain, was legal because it
was necessary, and because it did not unnecessarily withhold the
compensation required by the plaintiff's ownership. A relation of
trust, reaching far enough to authorize the defendant to convert
the plaintiff's real estate to his own use, but not far enough to
make him accountable for the conversion, cannot be sustained.

In a case on the statute of Anne for receiving more than came
to the defendant's just share and proportion, *Parke*, B., expressed
the opinion that when land, owned by A and B, is cultivated by A,
B is equitably entitled to none of the profit because he bears none

of the loss. *Henderson* v. *Eason*, 17 A. & E. N. S. 701, 709–711, 720, 721. There being no partnership in the business of cultivation A assumes all the risk and has all the profit. But this state of things has no tendency to show that B is not entitled to compensation for A's profitable or unprofitable use of his property. Equitable rent is one of the expenses of A's business ; and when he occupies the whole or more than his share of the common estate, his non-payment of rent unjustly increases his profit, or unjustly diminishes his loss, at B's expense. In *Brooks* v. *Howison*, 63 N. H. 382, where carpets were used by one of the owners a year and a half in his hotel, the fact that his co-tenants were not his co-partners in the hotel business did not make it unjust that he should pay for his consuming use of their goods. " It might be reasonable that a fair rent should be assessed. But that could hardly be worked out. The principle of justice in the common law is, that there is no wrong without a remedy ; but in the case of occupation by one co-tenant, without an ouster, there is not a wrong." *Maule*, J., in *Henderson* v. *Eason*, 17 A. & E. N. S. 701, 716. Both in equity and assumpsit for use and occupation, the problem of assessing a fair rent for the use of real estate can be worked out, as it has been in this case. *Early* v. *Friend*, 16 Grat. 21, 47–55 ; *Hayden* v. *Merrill*, 44 Vt. 336, 348. When the value is found, the share of each owner is easily ascertained. The wrong on the part of the defendant was not in taking the plaintiff's property (the use of the plaintiff's land), but in not accounting for its value.

In *Savings Bank* v. *Getchell*, 59 N. H. 281, the defendant occupied land rightfully ; and as the plaintiff's right to rent or damages was not found, there was no obligation to be enforced by the fiction of an implied promise, which is used only for an equitable purpose. Broom Leg. Max. 90. In *Barron* v. *Marsh*, 63 N. H. 107, and *Durrell* v. *Emery*, 64 N. H. 223, it was held that assumpsit could not be maintained for use and occupation without evidence of a contract express or implied ; but the question was not raised whether compensation could be recovered in some other form of action. If the plaintiffs had moved to amend their declarations by adding new counts, there would have been a question whether justice required the amendments. *Wendell* v. *Mugridge*, 19 N. H. 109, 113, 114 ; *Baker* v. *Davis*, 22 N. H. 27, 33–35 ; *Redding* v. *Dodge*, 59 N. H. 98 ; *Edes* v. *Herrick*, 61 N. H. 60, 61 ; *Logue* v. *Clark*, 62 N. H. 184, 185 ; *Hardy* v. *Nye*, 63 N. H. 612. In *Welcome* v. *Labontee*, 63 N. H. 124, the plaintiff recovered on a count in trover. The question whether there was an implied promise to pay rent, and whether the plaintiff could have recovered compensation for the use of his shop, in an action of contract or tort, or on a bill in equity, without a promise, express or tacit, was not decided. In *Berry* v. *Whidden*, 62 N. H. 473, the will of William Berry provided that " said Whidden is not to pay to my said son or sons anything for the use or income of said farm and estate

during his occupancy." It was evidently the testator's intention that Whidden (who was the testator's son-in-law, residuary devisee, and executor) was not to be liable to the sons for his use of the farm (devised to him) so long as they allowed him to have the exclusive occupation of it, but was to have the use of it, without liability to account, until they took or demanded possession after acquiring title in the manner provided by the will. It was not necessary to inquire whether he would have been liable to account if he and the sons had been tenants in common without a controlling testamentary stipulation. The decision was right, and the question whether the defect of the old law was a defect of remedy was not considered.

The procedure established by the courts at an early day "furnished a fixed number of 'forms of action.' . . . A writ had been settled, not only for each of the different 'forms of action,' but for the facts, circumstances, and events which could constitute the subject-matter of the particular actions embraced within each one of these several 'forms of action.' The precedents of all the writs which had been thus established were kept in an office connected with the chancery, called the *Registra Brevium.* . . . . If no writ could be found in the collection which substantially corresponded with the facts constituting the ground of complaint, then the plaintiff could have no action. . . . The common law furnished a very meagre system of remedies, utterly insufficient for the needs of a civilization advancing beyond the domination of feudal ideas. . . . No contract could be enforced unless it created a certain debt, or unless it was embodied in a sealed writing. No means was given for the legal redress of a wrong to person or property, unless the tortious act was accompanied with violence, express or implied. The injuries and breaches of contract which now form the subject-matter of so much litigation were absolutely without any legal remedy." 1 Pom. Eq., *ss.* 21–23; Pom. Mun. Law, *ss.* 102, 175, 192–207.

Since it is settled that the plaintiff is entitled to such legal process for the ascertainment and enforcement of his rights as justice and convenience require, the authorities on which the defendant relies are immaterial. They are mere iterations of the doctrine that in such cases as this there is no remedy. Bac. Abr. Joint-Tenants (L); *Henderson* v. *Eason*, 17 A. & E. N. S. 701, 718. The defence is a remedial defect that has ceased to exist in this state. There is "extreme difficulty in distinguishing between principles of substantive law and rules relating only to procedure, in the older books." Holm. Com. Law 190, *n.* The inns of chancery "were designed as places for elementary studies" where students "learned the nature of original and judicial writs, which were then considered as the first principles of the law." 4 Reeve Eng. Law 120. When remedies were considered first principles, and the development of substantive law was largely determined

by the operation of modes of procedure (3 Law Quarterly Review 166), there were no such understanding and observance of the distinction between remedy and right as are indispensable at the present time in this state. The ideas of the Middle Ages on the subject were full of confusion and error. The extent to which they have survived in other jurisdictions is an irrelevant inquiry. Under the law of remedy now in force here, rights can no longer be confounded with the inadequate relief afforded by English forms of action.

" Previous to the statute of Anne . . . no action lay by a tenant in common against his companion for the profits of the property owned in common. A remedy was given in that act by an action of account." *Jones* v. *Harraden*, 9 Mass. 540, *n*. " One tenant of real estate may recover," in an action of assumpsit " against another, for his share of any trees, fixtures, or other part of the estate destroyed, severed, or carried away by such other." G. L., *c*. 220, *s*. 3. " This statute . . . gives, not a new right, but a new remedy." *Olcott* v. *Thompson*, 59 N. H. 154, 155. The act of Anne is of the same kind. Such legislation, like 13 Edw. I, *c*. 22, giving one tenant in common an action of waste against another (3 Bl. Com. 227), is a partial enactment of our common law, which provides the best inventible procedure. The rule against the retrospective operation of law allows the introduction of remedies where none existed before, and their equitable application to existing causes of action. Cool. Con. Lim. 347, 436, 442, 454, 477, 478 ; 1 Hare Con. Law 421 ; *Boston, C. & M. Railroad* v. *State*, 32 N. H. 215, 225, 226 ; *Kent* v. *Gray*, 53 N. H. 576, 578, 579 ; *Walker* v. *Walker*, 63 N. H. 321 ; *Wurts* v. *Hoagland*, 114 U. S. 606 ; *Foster* v. *Essex Bank*, 16 Mass. 245, 268, 273 ; *Baugher* v. *Nelson*, 9 Gill 299, 309 ; *Satterlee* v. *Matthewson*, 16 S. & R. 169, 179—*S. C.*, 2 Pet. 380 ; *Hope* v. *Johnson*, 2 Yerg. 123, 125 ; *Bolton* v. *Johns*, 5 Pa. St. 145, 149 ; *Turnpike Co.* v. *Commonwealth*, 2 Watts 433, 435. " In . . . early times the chief judicial employment of the chancellor must have been in devising new writs, directed to the courts of common law, to give remedy in cases where none was before administered." 3 Bl. Com. 50. The use of writs invented for such cases was not an infringement of vested rights, but an enforcement of them. " We are not intrusted with the power of infringing substantive rights by withholding the necessary incident and appurtenant right of complete remedy : the common-law duty of inventing necessary forms of action, pleading, trial, judgment, and initial, intermediate, and final process, is as imperative now as it was during the ages in which its performance produced all the common-law procedure that is obsolete, and all that is now in use: the precedent to be followed is the performance of this duty, and not a violation of it." *Boody* v. *Watson*, 64 N. H. 162, 178 ; *Metcalf* v. *Gilmore*, 59 N. H. 417, 434 ; *Walker* v. *Walker*, 63 N. H. 321, 326.

" *Popham*, C. J., said that every act done by one joint-tenant in benefit of himself and his companion is good ; as payment of rent, &c., to the lord by one doth discharge the other: but one joint-tenant cannot prejudice his companion as to any matter of inheritance or freehold, but as to the profits of the freehold the one may prejudice the other ; for there is a privity and trust between two joint-tenants, and therefore if one takes all the profits of the land, or the whole rent, &c., the other hath no remedy ; for it was his folly to join himself in estate with such a person as would break the trust" (*Tooker's Case*, 2 Co. 66, 68), "to remedy which an action of account is given by statute of 4 Anne, *c.* 16, although the defendant was not actually bailiff." *Ballou* v. *Hale*, 47 N. H. 347, 352. *Popham* seems to have thought that the privity and trust between two owners in common is a reason why there should be " no remedy " when one of them takes all the profits, or the whole rent, and refuses to account. If the folly of the other in joining himself with a person capable of a breach of trust is the reason why no writ for such a case was found in the office of precedents, it does not suspend the duty of inventing and using the remedial process that justice requires. The privity and trust of common ownership may be created by the law of descent, and by wills, as well as by contracts. In neither case does the law regard its creation as an act of folly. Whether the property is real or personal, and whether the trust inherent in the undivided interests of common owners arises from the law, or from a will or contract, neither of the owners can " break the trust" with impunity. An exceptional lack of remedy in this class of cases of fiduciary rights and obligations is not a doctrine of our law.

"At common law, if a man were disseised, and his entry taken away, he could never recover, by any action, the mesne profits. . . . But the chancery interposed, and at last carried the remedy farther than had been admitted at common law." Bac. Abr., Accompt (B). The income of a farm belonged to the owner of the farm before the means of recovering the income was supplied by chancellors and parliaments. When there were several owners, the right of each to his share of the income existed before the statute of Anne. To deny the vested right of each in the income, is to assert that the land is not theirs. That right is the substance of the title—the whole of the beneficial interest. "A conveyance of the use of land forever is equivalent to a conveyance of the land." *Farrar* v. *Cooper*, 34 Me. 394, 398. " By the grant of the profits of land, 'the whole land itselfe doth passe ; for what is the land but the profits thereof ?' Co. Lit. 4 b. A devise of the use and income of land is a devise of the land itself. *McClure* v. *Melendy*, 44 N. H. 469; *Wood* v. *Griffin*, 46 N. H. 230, 234." *Boston, C. & M. Railroad* v. *Railroad*, 65 N. H. 393, 453, 454. The referee has not found a sale or gift to the defendant of any part of the plaintiff's half of the profits. The defendant having converted

to his own use a part of the plaintiff's half, and refused to account, the law of the case is what it would be if the defendant had refused to account for rent of the farm paid him by a third person, or for crops and provisions owned in common by the defendant and the plaintiff and consumed by the defendant.

When one tenant in common " has laid out large sums in improvements on the estate, . . . although . . . the money so laid out does not, in strictness, constitute a lien on the estate, yet a court of equity will not grant a partition without first directing an account, and compelling the party applying for partition to make due compensation. So, where one tenant in common has been in the exclusive perception of the rents and profits, on a bill for a partition and account, the latter will also be decreed." Sto. Eq. Jur., s. 655. Equitable adjustments between common owners do not depend upon the rule that he who asks equity must do equity. " In the courts of common law, both of England and America, there are certain prescribed forms of action, to which the party must resort to furnish him a remedy; and if there be no prescribed form to reach such a case, he is remediless; for they entertain jurisdiction only of certain actions, and give relief according to the particular exigency of such actions, and not otherwise. . . . Courts of equity . . . can administer remedies for rights, which rights courts of common law do not recognize at all; or if they do recognize them, they leave them wholly to the conscience and good-will of the parties." Sto. Eq. Jur., ss. 26, 29.

" Cases of account between tenants in common, between joint-tenants, between partners, between part owners of ships, and between owners of ships and the masters, . . . involve peculiar agencies, like those of bailiffs or managers of property, and require the same operative power of discovery and the same interposition of equity " as other cases of fiduciary rights and obligations. " Indeed, in all cases of such joint interests, where one party receives all the profits, he is bound to account to the other parties in interest for their respective shares, deducting the proper charges and expenses; whether he acts expressly by their authority as bailiff, or only by implication as manager, without dissent, *jure domini*, over the property." Sto. Eq. Jur., s. 466; *Leach* v. *Beattie*, 33 Vt. 195, 200, 201.

Whether the defendant's obligation to account is enforcible by a bill in equity, or in this action upon a promise implied by law, is a question of no practical importance. Time spent in considering it would be wasted. If, upon examination, it were found that the action in its present form cannot be maintained, the plaintiff would be allowed to amend his declaration by filing a bill in equity. *Peaslee* v. *Dudley*, 63 N. H. 220; *Sleeper* v. *Kelley*, 65 N. H. 206. When such an amendment is made, he will be entitled to judgment.

*Case discharged.*

ALLEN, J., did not sit: DOE, C. J., CLARK and BLODGETT, JJ., concurred.

CARPENTER, J., *dissenting.* The difficulty sometimes met in drawing the line between declaring and making the law (Broom Com. 5) is not encountered here. Ever since estates in common have been known to the law, it has been the unquestioned legal right of a tenant in common—one of his essential proprietary rights—to occupy, use, and enjoy the common property without liability to account to his co-tenants, so long as he does not prevent them from exercising the same right. The earliest reported judicial declaration of the doctrine to which attention has been called is found in the Year Book, 17 E. 2, 552 (A. D. 1324), and the latest in the unanimous judgment of this court in *Berry* v. *Whidden,* 62 N. H. 473 (A. D. 1883). If in *Berry* v. *Whidden* the same result might have been reached on other grounds, its authority on the point decided is not thereby diminished. *Webster* v. *Calef*, 47 N. H. 289. The doctrine is the logical and necessary consequence of the nature of the estate. It is the law, not of remedy, but of right. In respect to occupation and the right to occupy, there is no difference between tenants in common and joint-tenants. Each of two co-tenants is equally entitled to the possession and use as well of every parcel as of the whole. In occupying, each exercises his own and not his companion's right. Neither can lawfully exclude the other. No more can either, by his voluntary omission to exercise his own right of occupation, destroy or modify the other's right. Lit , *ss.* 288, 292, 323; 2 Bl. Com. 182, 191, 192; 4 Kent 359, 367–369; *Daniel* v. *Camplin,* 7 M. & G. 167, 170, 172 *n.; Murray* v. *Hall,* 7 C. B. 441, 454, 455 *n.; Wood* v. *Phillips,* 43 N. Y. 152; *Calhoun* v. *Curtis,* 4 Met. 413.

For the exercise of his legal rights upon land of which he is lawfully possessed in his own right, no one is in law or in equity accountable to another in any form of procedure. No promise to account can be implied (*Sceva* v. *True,* 53 N. H. 627), and any consequential loss must be borne by him on whom it falls. Sedg. Dam. 29–32.

The common law recognizes no right for the violation of which it does not provide a remedy. If it gives no remedy, it gives no right. 3 Bl. Com. 123; Broom Leg. Max. 193; *Ashby* v. *White,* 2 Ld. Raym. 938, 953; *Rich* v. *Flanders,* 39 N. H. 304, 351. In some cases it gives a remedy without legal process. 3 Bl. Com. 18–21; Co. Lit. 200 a. To take away all remedy for its infringement is, in legal effect, a repeal of the law. *Squire* v. *Grevett,* 2 Ld. Raym. 961, 964; 1 Salk. 74; *Willard* v. *Harvey,* 24 N. H. 344, 353; *Rich* v. *Flanders,* 39 N. H. 304, 347, 351, 353, 374, 379, 385, 390. To give a remedy where none by law exists, is to enact a law creating rights. In each case alike it is legislation.

Littleton (*s.* 323) and Coke (Co. Lit. 197, 200) state the distinction between an indivisible chattel of which the possession or use is of necessity exclusive, and apportionable lands which may be possessed and enjoyed in common. The law governing the rights and remedies of joint owners of such a chattel has no application to the present question. It is irrelevant for the purpose of argument or illustration, until it is shown that the possessor of the chattel is bound by law to account for its use to his co-tenant, who is free to take it into his own possession whenever he will. *Prentice* v. *Ladd,* 12 Conn. 331, 333; *Southworth* v. *Smith,* 27 Conn. 355, 359; *Brown* v. *Wellington,* 106 Mass. 318, 319.

The plaintiff's position, that the exemption of the tenant occupying common lands from liability to account for the use of the property to his unexcluded co-tenants was due to the want of remedial process by which they could enforce their rights, is without foundation. The reverse is true. The law provided no remedy, because there was no violation of right. It might as well be argued that the wife's common-law disabilities, and the husband's title to her property, were due to the lack of suitable process for the vindication of her rights, or that, on a recovery of land, the defendant's inability to obtain compensation for improvements made by him while in peaceable possession under a supposed legal title (G. L , *c.* 232, *ss.* 6–8) was owing, not to the law of property, but to the neglect of the judges to invent a method of procedure by which his claim for betterments could be enforced. If the position is sustained, the unwritten laws of property are few that judges who happen to think them harsh or inequitable may not repeal under the guise of remedial invention. *Rich* v. *Flanders,* 39 N. H. 304, 390.

Whether it would be wise in the legislature to repeal the law and make a tenant's "own omission to occupy the joint estate a ground of action against his co-tenant" (62 N. H. 476, 6 Gray 120), is a question upon which opinions may perhaps reasonably differ. It has been, and well may be, doubted whether justice would be promoted by giving a tenant, who voluntarily declines to occupy the common estate, the power to prevent his co-tenants from occupying it except upon terms of paying him rent. *Henderson* v. *Eason,* 17 Q. B. 701, 710–716, 720, 721; *McMahon* v. *Burchell,* 2 Ph. Ch. 127, 134; *Sargent* v. *Parsons,* 12 Mass. 149, 153. The common law of tenancy in common has been modified by legislation in several particulars (3 Bac. Abr. 699–704, 708, G. L., *cc.* 141, 220, 247), but the law-makers acquainted for six centuries with its practical operation have seen no cause for depriving co-tenants of the right in question.

An excluded tenant in common may recover of his co-tenant the possession in ejectment (Lit., *ss.* 322, 323, 1 Chit. Pl. 79, 191) and the mesne profits in a subsequent action (*Goodtitle* v. *Tombs,* 3 Wils. 118, 1 Chit. Pl. 79, 195, Runn. Eject. 443, Stearns R. A.

404), or he may maintain trespass for his damages. *Wood* v. *Griffin*, 46 N. H. 230. The rental value during the time of his exclusion (he may recover more, 3 Wils. 120) indemnifies him for the past, and partition will protect him in the future. If not excluded he needs no remedy, because no right is infringed.

Equity follows, and is bound by the law. It can neither give to the plaintiff, nor take from the defendant, a legal right. Against established law it can afford no relief. 3 Bl. Com. 429–437 ; 1 Sto. Eq. Jur., *ss.* 11–20. "In no case does it contradict or overturn the grounds or principles" of the law. "That is a discretionary power, which neither this nor any other court, not even the highest, acting in a judicial capacity, is by the constitution intrusted with." *Cowper* v. *Cowper*, 2 P. Wms. 720, 753, 754. It cannot compel a party to account who is declared by law to be under no obligation to account. Hence, though having full jurisdiction (1 Sto. Eq. Jur., *ss.* 441, 466), it has never yet required, or attempted to require, an occupying tenant in common to account for the use of the property to a co-tenant who may occupy whenever he will.

Courts of justice cannot lawfully make, or repeal, the law. The power is denied to them by the common law (Co. Lit. 115 b, 282 b, 379 b, 1 Bl. Com. 70, 71, 142, 269, and Christian's notes 3 and 4 at *p.* 70, 1 Kent 476, *Brydges* v. *Chandos*, 2 Ves. Jr. 417, 426, *Entick* v. *Carrington*, 19 How. St. Tr. 1029, *Mirehouse* v. *Rennell*, 1 Cl. & Fin. 527, 607, *Egerton* v. *Brownlow*, 4 H. L. Ca. 1, 123, *Attorney-General* v. *Dean of Windsor*, 8 H. L. Ca. 369, 391–393, *Beamish* v. *Beamish*, 9 H. L. Ca. 274, 337–339, 349, *Freeman* v. *Tranah*, 12 C. B. 406, 411–415, *Osborn* v. *Bank of U. S.*, 9 Wheat. 738, 866, *Bellows* v. *Parsons*, 13 N. H. 256, 261–263), and for the soundest reasons. "It may be lamented that the law upon any subject is in such a state as to induce eminent judges and writers to express their disapprobation of it, and their regret that they are bound to give it effect; but it would be still more to be lamented if judges should be found who thought themselves at liberty to declare the law according to their own fancies of what it ought to be. All stability would be lost, and the law, which should be administered upon clear and fixed principles, would be involved in uncertainty and confusion." *Bullin* v. *Fletcher*, 1 Keen 369, 379. "If law well established may be annulled by opinion, a foundation is laid for the most restless instability. The decisions of one court may be overruled by another court, and those of the latter will have only a transient efficacy until some future court, dissatisfied with them, shall establish new principles in their place. No system of inflexible adherence to established law can be as pernicious as such ceaseless and interminable fluctuations." *Palmer* v. *Mead*, 7 Conn. 149, 157. "It is no part of my duty to make new law simply because I think the old law unreasonable: that is the province of the legislature. When I

find a point decided, however I may lament the result, I think I am bound to follow the decision and to construe it fairly, and not seek to evade it or fritter it away by introducing distinctions only invented for the purpose of pronouncing another decision which in my opinion would be more in conformity with reason." *Jessel*, M. R., in *Bellairs* v. *Bellairs*, L. R. 18 Eq. 510, 513. If it were otherwise at common law, the authority is denied to us by the express terms of the constitution. The legislature cannot confer it upon us. *State* v. *Hayes*, 61 N. H. 264. "All the laws which have heretofore been adopted, used, and approved in the province, colony, and state of New Hampshire, and usually practised on in the courts of law, shall remain and be in force until altered or repealed by the legislature." Const., *art.* 90.

A sufficient reason, if there were no other, for leaving the repeal of the common law of property rights to the legislature is, that its enactments look to the future without disturbing the past; they have, and under the constitution can have, no retrospective operation (Bill of Rights, *art.* 23), while judicial lawmaking is necessarily retroactive, not only in the particular cause adjudged, but in all other similar and subsisting causes. By the established law of the land, the defendant, during all the time he occupied the premises, did the plaintiff no wrong and incurred to him no liability. He exercised his legal right, and left the plaintiff at liberty to exercise his equal right. *Webster* v. *Calef*, 47 N. H. 289; *Berry* v. *Whidden*, 62 N. H. 473. Whatever the plaintiff lost, he lost through no act of the defendant, but by his own laches. At the date of his writ he had no ground of complaint, in equity or at law. A judgment in his favor will impose on the defendant an obligation which prior to its rendition did not exist. Had the legislature at its last session enacted a statute having the same effect on the rights of the parties, it would be the duty of the court to pronounce it unconstitutional and void. *Woart* v. *Winnick*, 3 N. H. 473, 477; *Towle* v. *Railroad*, 18 N. H. 547, 551. A judgment for the plaintiff will be as "highly injurious, oppressive, and unjust" as the statute would be; it will be as obnoxious to the spirit, as the statute would be to the letter, of the bill of rights. *Cahoon* v. *Coe*, 52 N. H. 518, 526.

The doctrine of the supreme court of the United States, and of this court, that contracts valid under the settled judicial or practical construction of the constitution and laws when they are made, cannot be invalidated by a subsequent judgment of the court that the construction was wrong (*Douglass* v. *County of Pike*, 101 U. S. 677, 686, 687, and cases cited, *Opinion of the Justices*, 58 N. H. 623, *Willoughby* v. *Holderness*, 62 N. H. 227, 228), does not rest upon the provision of the federal constitution that no state shall pass any "law impairing the obligation of contracts" (*New Orleans Waterworks* v. *Sugar Co.*, 125 U. S. 18, 30–38, and cases cited), but on the principles of the common law—"the sound-

est principles of justice." *Ohio Life Ins. & Trust Co.* v. *Debolt*, 16 How. 416, 431. " To hold otherwise would be as unjust as to hold that rights acquired under a statute may be lost by its repeal." *Gelpcke* v. *Dubuque*, 1 Wall. 175, 206. Contractual rights are no more sacred and no more entitled to protection than other rights. To create a debt or duty where none by law exists is as unjust as to make a valid contract invalid. It is immaterial to the sufferers by what agency the result is wrought: if effected by judicial action, it affords them no relief to be informed that from a like injury at the hands of the legislature they are protected by the constitution, or that the established law, on the faith of which they acted, was bad law. The defendant is entitled to judgment.

SMITH, J., concurred in this opinion.