(25 Misc. Rep. 676.)

### PEOPLE ex rel. WINSTON v. WINSTON.

(Supreme Court, Special Term, New York County. December, 1898.)

1. HABEAS CORPUS—JURISDICTION—CUSTODY OF CHILDREN.

The right to the custody of a minor cannot be adjudicated on habeas corpus until the child is actually produced before the court.

2. SAME—REMOVAL OF CHILD FROM STATE.

Where a citizen and resident of New York, for the purpose of avoiding the jurisdiction of the state courts, removes a child from the state, the court may enforce its return, if the court can obtain jurisdiction of the person in whose custody the child is, and then determine the question as to its custody.

3. CHANGE OF DOMICILE.

In the absence of evidence of an intention to abandon the former domicile and acquire another, a mere change of residence is insufficient to effect a change of domicile.

Habeas corpus proceedings by the people, on the relation of Walker Winston, against Lillie Winston. On exceptions of respondent to the report of the referee. Overruled.

John J. Crawford, for relator.

Scott & Treadwell, for respondent.

DALY, J. Exceptions of respondent to report of Martin L. Hollister, Esq., referee, to whom was referred the issues raised by the relator's traverse to the respondent's return to habeas corpus, directing the production by her of Lillian Winston, the infant daughter of the relator and respondent. When this case was before the appellate division, it was held by the court that until the child is

actually produced before the court, so that it is within its jurisdiction, there can be no adjudication upon the question as to its custody. Winston v. Winston, 31 App. Div. 121, 52 N. Y. Supp. 814. This disposes of the exception to the failure of the referee to give his opinion upon the issue whether the relator is an unfit person to have the custody of the child, by reason of the adultery of which he was convicted in the divorce action brought by him against the respondent. The court will not consider this issue, which is involved in the question of the right to the custody of the child, until the child is produced before it; and therefore the only issue to be now considered is the controversy as to whether the respondent and the child were nonresidents of the state when the writ of habeas corpus was granted. That question is raised by the respondent's exception to the referee's finding and conclusion "that relator, respondent, and the infant child, Lillian, are now, and were when the writ of habeas corpus was served on respondent herein, and have been for several years past, under the laws of this state, undoubted legal residents of the state of New York," and "that, from all the evidence presented to him in this matter, the respondent removed herself and said infant from this state to the state of New Jersey temporarily, for the purpose of being out of the jurisdiction of the courts of this state, and for the further object of avoiding the service upon her of any process or mandate of the court." If these exceptions are sustained, then there will be no necessity to consider the question of custody of the child, because the court has no jurisdiction; but, on the other hand, if the findings of the referee are sustained, the court must make an order for the production of the child, in order that the right to its custody, or the propriety of leaving it in the custody of its mother as at present, may be properly determined. The custody of the child was given to the mother by the father upon their separation, in June, 1895. After that date the mother took up her residence in Oklahoma territory, and in June, 1896, procured a decree of divorce by default from her husband, in the district court of that territory, upon service of notice by publication. She subsequently, in October, 1896, married Dr. Ludden, and resided with him, in New York City, until she removed to Hoboken, N. J., in January, 1898, with the child. Such removal was pending an action brought by her husband in the supreme court of New York to dissolve the marriage between him and the respondent, on the ground that her cohabitation with Dr. Ludden constituted adultery, on the assumption that such marriage had not been dissolved by the Oklahoma divorce. The New York action was brought in December, 1896, and judgment was rendered therein March 2, 1898, dismissing the complaint, upon the finding of the referee that the defense interposed by the defendant therein of the adultery of the plaintiff therein had been sustained. The report of the referee was made on January 11, 1898, by which he determined the invalidity of the Oklahoma divorce, and the unlawful cohabitation of the defendant and Dr. Ludden, owing to the invalidity of their marriage, but, finding that the plaintiff had also been guilty of adultery, reported against the granting of a divorce. In his opinion, rendered at the time of making his report, the referee discussed the propriety of

leaving the infant child of the parties in the custody of its mother, saying:

"I see no reason to fear that the child will suffer either morally or physically in her mother's custody. But the mother is entirely without means or property expectations; and, however liberally she may now be provided for by Ludden, the fact remains that their relations may not prove to be permanent, and the time may come when it will well be impossible for the mother to provide for the child. Apart, therefore, from the obvious fact that it is grossly improper that the child should be dependent for support upon her mother's paramour, it seems clear to me that the future welfare of the child demands that she should not be left in a situation where she must necessarily become estranged from her father and his family."

And the referee recommended that the custody of the child should be committed to its paternal grandmother. He was of opinion, and so found, that the court would have no power, upon the dismissal of the complaint, to make any order for the disposition of the custody of the child, and in this he was subsequently sustained by the court.

At or immediately after the making of the said report, in January, 1898, and before the judgment in the action was rendered, the respondent took her child from the house No. 243 West 120th street, where she had lived with Dr. Ludden since October, 1896, and went to reside in a flat on the third floor of a tenement house, No. 110 14th street, in Hoboken, N. J., coming occasionally to the city of New York, and on one occasion remaining a few weeks at No. 233 West 120th street, to which number Dr. Ludden and her mother had removed on May 1, 1898, from No. 243. The conclusion is irresistible that the removal of the respondent from this city to Hoboken was not with the intention of changing her place of residence, but to avoid the process of the courts of this state, in apprehension of some proceeding based upon the intimation of the referee in the divorce action that her child should be taken from her custody, and given to her husband's mother. No plausible reason for her change of residence is advanced on her behalf. Her removal from a respectable residential neighborhood in New York to a very inferior quarter in Hoboken is not conducive to the better rearing of the child, nor to any improvement of its physical condition. A separation from Dr. Ludden did not necessitate a removal from the state. The actual removal having taken place in January, the respondent declares in her sworn return to the habeas corpus that the infant became a resident of New Jersey in March, 1898, after the rendition of the judgment, refusing to make any order awarding the petitioner the custody of the child. If the residence of the mother and of the child began at different dates, no explanation for it is given. Her mother and Dr. Ludden continue to reside in this city. They were not called as witnesses on her behalf on the inquiry as to her change of residence, nor was her testimony offered upon that issue. The fact of her domicile and residence in this city in and after October, 1896, and continuously down to January, 1898, being established, the burden is undoubtedly upon her to show a change of residence, with an intention to permanently abandon her domicile in this state. Change of residence alone, without the intention to abandon the former domicile and acquire another, will not effect a change of domicile. Dupuy v. Wurtz, 53 N. Y. 561; De

Meli v. De Meli, 120 N. Y. 485, 24 N. E. 996; Hart v. Kip, 148 N. Y. 306, 42 N. E. 712. Nothing has been shown on the part of the respondent which would warrant a belief that she intended a permanent change of domicile when she removed her child to New Jersey, nor that she had any object other than placing the infant out of the reach of the court. An order therefore will be made, under the ruling of the appellate division in this case (31 App. Div. 121, 52 N. Y. Supp. 814, cited above), that where a citizen and resident of this state, for the purpose of avoiding the jurisdiction of the court, removes a child from the state, the court may enforce its return, when it can obtain jurisdiction of the person in whose custody the child is, and then determine the question as to its custody. This will be done by an order requiring the respondent to produce the child in this court on a day to be named. Obedience of the order may be enforced by attachment. The order may be settled upon notice.

Exceptions overruled, and report of referee confirmed. Ordered accordingly.