Hillsborough, }
March 4, 1913. }

JAMES H. WHITE *v.* MAYBELLE B. WHITE.

MAYBELLE B. WHITE *v.* JAMES H. WHITE.

A decree of divorce upon petition of a wife includes a finding that her domicile was in this state when the divorce was granted and that it was not changed by the husband's prior acquisition of a domicile elsewhere.

The joint guardianship conferred upon the father and mother of a minor by chapter 104, Laws 1911, is not dependent upon their continuance of the marital relation and can only be terminated during the minority of the child by the death of one parent or by a decree of court awarding guardianship to some other suitable person; and in case of disagreement between separated or divorced parents, the court may award custody to either, or may apportion it between them as their rights, the child's welfare, and the circumstances of the particular case require.

Where the mother of a minor is domiciled here and possesses equal rights of custody with the father, the child's domicile in this state is not lost by its removal to the domicile of the father elsewhere.

In such case the court of this state has power to determine the question of the child's custody, and its jurisdiction may be invoked by a motion to bring forward a divorce proceeding between the parents or by resort to *habeas corpus*.

PETITION, for a writ of *habeas corpus*, brought by the father against the mother to recover the custody of their minor child, now four years of age, and LIBEL FOR DIVORCE, brought by the mother against the father in November, 1911, in which proceeding a divorce

was granted in January, 1912, but which was brought forward for a hearing upon the prayer for custody. The suits were tried together before a master, and the case was transferred from the September term, 1912, of the superior court by *Pike*, J.

The parties were married at Manchester on July 24, 1907, and lived together in this state until July 31, 1910. The daughter was born on August 23, 1908. After the separation the child was cared for by the mother for a time and later by the father, the mother providing the child some clothing and visiting her at times. In July, 1911, White went West; and in September of that year, having determined to remain permanently in the West, he caused the child to be sent to him in Ohio, where he was then living. Mrs. White did not know that the child was to be sent to him and did not consent to it.

October 1, 1912, Mrs. White received a card from her husband upon which was written "J. H. White and wife." In November she went to Ohio and after some parleying was permitted to see the child. At a subsequent visit she took the child and with the aid of others brought her to New Hampshire, against the wish and consent of White. Mrs. White acted in good faith in going for the child, her visit to Ohio at the time being almost wholly due to the act of her husband in sending the card hereinbefore referred to. White had not married, and the card was intended as a joke. November 23, 1912, White brought the petition for *habeas corpus*.

The libel for divorce brought by Mrs. White in 1911 alleged adultery and contained a prayer for custody. Service was by publication. Counsel appeared for the libelee and objected to the prayer for custody, but withdrew his appearance upon that prayer being waived. The court made no order as to custody. At the hearing before the master, counsel for White objected to the libel for divorce being brought forward and appeared specially on this motion. White appeared and testified fully as to both suits. The conclusion of the court was that neither the father nor the mother, as they are situated, could exercise the care that the child required, and that it would not be conducive to the child's interest that custody be awarded to either of them. The court thereupon committed the custody, until further order, to Mt. St. Mary's Convent of Mercy, of Manchester. White excepted to the conclusion of the court and to the orders made, on the ground that the court had no jurisdiction of the question of custody.

_ *Taggart, Burroughs & Wyman (Mr. Wyman* orally), for James H.. White.

*David W. Perkins* and *George I. Haselton,* for Maybelle B. White..

BINGHAM, J. April 6, 1911, when chapter 104, Laws of 1911, became operative, the residence and domicile of the father, mother, and minor child were in this state. Since then the mother's residence and domicile have continued here. The decree of divorce includes a finding that her domicile was here at the time the divorce was granted and that it was not changed by the husband's previous. acquisition of a domicile elsewhere. *Foss* v. *Foss,* 58 N. H. 283;. *Harteau* v. *Harteau,* 14 Pick. 181, 186; *Haddock* v. *Haddock,* 201 U. S. 562, 570, 571; Brown Jur. 290. The father became domiciled in Ohio in September, 1911, and during the latter part of that month caused the child to be sent to him in Ohio, without the knowledge or consent of the mother. Having ascertained where the child was and believing that the father had married again, the mother went to Ohio in November, 1912, obtained possession of the child, and, aided by others, brought her to New Hampshire without the consent of the father. In doing this she acted in good faith.

The father contends that upon these facts the courts of this state have no jurisdiction to inquire into and determine the question of the custody of the child, either by bringing forward the divorce proceeding or upon *habeas corpus.* He apparently concedes, and such is undoubtedly the law, that if the child's domicile is in this state the court would have jurisdiction to determine the question of custody and could enforce its decree, the child being within the state and amenable to its mandate. *People* v. *Winston,* 52 N. Y. Supp. 814, 816, 817. It is also reasonably certain that the court would have jurisdiction to determine the question of custody if the child were domiciled within the state, but was subject to the control of the father and was being secreted by him without the state, the father being within the state and subject to the process of the court (*People* v. *Winston,* 56 N. Y. Supp. 323; *People* v. *Asylum,* 68 N. Y. Supp. 279, 280, 283; *In re Jackson,* 15 Mich. 417, 433, 440, 441; *Regina* v. *Barnardo,* 24 Q. B. Div. 263); and that the. same would be true if the child were not legally domiciled within the state, but was actually in the state and her presence here had not been. brought about by force for the purpose of conferring jurisdiction in pending or contemplated litigation. *Hanrahan* v. *Sears,* 72

N. H. 71, 72; *Woodworth* v. *Spring*, 4 Allen 321, 322, 326; *In re Hubbard*, 82 N. Y. 90, 95; *Stuart* v. *Bute*, 9 H. L. Cas. 440. The contention of the father therefore reduces itself to this: (1) That the child's domicile is in Ohio, where the father now resides, and nowhere else; and (2) that her presence in this state having been brought about through a display of force and without the father's consent, though in good faith, the child is not rightfully here, and the court is not authorized to take jurisdiction and determine the question of custody.

It is true that at common law the father is the natural guardian of his minor child, and because of this his domicile is the domicile of the child. *State* v. *Richardson*, 40 N. H. 272, 273; *Prime* v. *Foote*, 63 N. H. 52. But in 1911, when all the parties resided in this state and were domiciled here, the common law upon this subject was changed by an act of the legislature constituting the mother a joint guardian with the father of their minor children, with equal powers, rights, and duties. Laws 1911, *c.* 104, *ss.* 1, 2. This statute reads as follows:

"Section 1. The father and mother of every minor child are hereby constituted joint guardians of the person of such child, and the powers, rights, and duties of both the father and mother in regard to such child shall be equal. Upon the death of either the father or the mother, the surviving parent of any unmarried child under the age of twenty-one years shall become the sole guardian of the person of such child.

"Sect. 2. Nothing herein contained shall prevent any court of competent jurisdiction from appointing any suitable person to be guardian, and the custody of any minor child may be awarded to either parent by any court having jurisdiction."

It is apparent from the language of the act that it was not intended the joint guardianship there conferred should be dependent upon the father and mother living together as husband and wife, or that it should be terminated in any other manner during the minority of their child or children than by the death of one of the parents (in which case the surviving parent becomes the sole guardian), or by a decree of court awarding guardianship to some suitable person should the parents be unsuitable to perform the trust; and that in case a disagreement should arise as to the exercise of their rights of custody, the parents having separated or having been divorced, the court might regulate their joint rights by awarding custody to either parent permanently or temporarily, or by some

division of time so apportion the custody between them as the welfare of the child, the rights of the parents, and the circumstances of the particular case required.    The provisions in the act relating to the adjustment of differences that might arise out of the joint guardianship were no doubt inserted in the belief that the common law afforded no remedy in such case (Co. Lit. 200 a, 200 b) and in ignorance of the doctrine announced in *Gage* v. *Gage*, 66 N. H. 282, 286, where it is said: "At the present day, the practice of snatching an infant ward by each of several guardians when he could see his time would not be tolerated.    By a division of time (as in some cases of real estate—*Chesley* v. *Thompson*, 3 N. H. 9), or by some other temporary or permanent regulation consistent with the interests of the ward (*State* v. *Libbey*, 44 N. H. 321), the evils that formerly attended a lack of specific remedy by legal process could be averted without a dissolution of the common right.    The condition of a ward living in constant expectation of capture and recapture is not a necessary incident of wardship possessed by two."

It follows from what has been said that as the mother, at the time the child was taken from this state at the instance of the father, was domiciled here and was a joint guardian possessing equal rights with the father to the child's custody, the child's domicile in this state was not lost by her removal to the domicile of the father in Ohio; and the court had jurisdiction, not only to determine whether the child was restrained of her liberty, but to determine the question of custody, and its jurisdiction over the latter question could be invoked in a divorce (P. S., c. 175, ss. 12, 13) or *habeas corpus* proceeding (P. S., c. 239, s. 1), in either of which the court should proceed upon the "principles of equity." P. S., c. 239, s. 20; *Gage* v. *Gage*, 66 N. H. 282.

It is unnecessary to decide the second question raised by the father.    It may be said, however, that even though the mother were not a joint guardian with the father, and the child had no legal domicile in this state, but was forcibly brought here by the mother and for the purpose of conferring upon the court jurisdiction over the question of custody in her divorce proceeding, upon its appearing that the child was too young to decide for itself what was for its own welfare, the court should not hesitate to take jurisdiction and determine whether either or both of the parents were suitable persons to perform the trust; and if neither, then to award custody to a suitable person.    In such case the child would not be chargeable with the conduct of the mother in bringing it into the

state; and the mother's purpose, though fraudulent, should not be permitted to preclude the court from entertaining jurisdiction and determining what is for the child's welfare. If the rights of the mother and father, as respects each other, were alone involved, the court might decline to permit its jurisdiction to be thus invoked; but as the rights of the child are also involved, no sufficient reason for adopting such a course can be perceived. *Woodworth* v. *Spring,* 4 Allen 321; *State* v. *Rhoades,* 29 Wash. 61, 66, 67; Schoul. Dom. Rel., s. 249.

*Exception overruled.*

All concurred.