Coös,
April 7, 1931.

GEORGE T. LECLERC (Olive Leclerc, *Petitioner*)

*v.*

EMELDA LECLERC.

*Ovide J. Coulombe* and *Ira W. Thayer*, for the plaintiff, furnished no brief.

*Matthew J. Ryan* and *Edmund Sullivan*, for the defendant.

BRANCH, J. It is well settled law that divorce proceedings abate upon the death of either of the parties. *Kimball* v. *Kimball*, 44 N. H. 122; s. c. 82 Am. Dec. 194 and Note. *Rollins* v. *Gould*, 244 Mass. 270; 9 R. C. L. Tit., Divorce and Separation, *s.* 214. "And this effect must extend to whatever is identified with those proceedings." *McCurley* v. *McCurley*, 60 Md. 185. How far, if at all, this rule may be subject to limitations and exceptions is a difficult question which we need not consider in detail at this time (see 9 R. C. L. *ubi cit.*), for under none of the limitations or exceptions suggested or established by the authorities elsewhere could a divorce proceeding be kept alive after the death of one party for the purpose of dealing with a new situation brought about solely by such death. It is also clear, we think, that the statutory provision for revision and modification of orders in divorce cases (P. L., *c.* 287, *s.* 12), does not weaken the force of the foregoing principle so far as orders relating to custody are concerned.

Prior to the entering of the divorce decree the parents were the "joint guardians of the person" of their children and their "powers, rights and duties" in regard to such children were equal. P. L., *c.* 290, *s.* 4. The divorce court had power to "regulate their joint rights by awarding custody to either parent permanently or temporarily, or by some division of time so apportion the custody between them as the welfare of the child, the rights of the parents, and the circumstances of the particular case required." *White* v. *White*, 77 N. H. 26, 29-30. When the joint rights of the parties were terminated by the death of the father the problem of custody, so far as it concerned the divorce court, ceased to exist, just as the problem of divorce disappeared when the libellant died in the case of *Kimball* v. *Kimball*, *supra*. The divorce laws gave the court no authority to consider new questions then arising although similar in nature to those previously passed upon, nor did they make the children the permanent wards of the court. *Stone* v. *Duffy*, 219 Mass. 178, 181. The situation in regard to custody has been well stated by the supreme court of Massachusetts as follows: "The decree went no further than to adjudicate the parental rights of the former husband and wife as between themselves and custody was conditioned to both lives, with the obligation imposed on the father to provide for the child's support. The liability for payment of alimony ceased with his death, although his executor or the administrator of his estate ordinarily could be held for accrued arrears, . . . The provisions for custody also were abated or expired by limitation, *Rawson* v. *Rawson*, 156 Mass. 578, 580; *In re Black-*

*burn,* 41 Mo. App. 622; *Davis* v. *Davis,* L. R. 14 P. Div. 162." *Stone* v. *Duffy, supra.*

The provisions of P. L., *c.* 316, *s.* 6, that the superior court shall take cognizance "of petitions for divorce, nullity of marriage, alimony, custody of children and allowance to wife from husband's property for support of herself and children" merely impose upon the superior court the duty of administering the divorce statutes and confer upon it no independent jurisdiction over the custody of children.

For the purpose of deciding who should have the custody of the Leclerc children after the death of their father, the divorce proceeding was dead and the defendant's exception to the attempt of the trial court to make further orders therein must be sustained.

It should be noted in passing that different considerations may govern the question of alimony, and that the declaration of the Massachusetts court above quoted, that liability for the payment of alimony ceased with the death of the husband, may not correctly state the law of this jurisdiction. In *Spofford* v. *Smith,* 55 N. H. 228, it was held that a petition for an additional allowance of alimony might be maintained by the libellant after the death of the libellee. The ground upon which it was held "that the death of the libellee does not cut off the right of the libellant to make the application against his executor" does not appear. In the opinions of *Ladd* and *Smith,* JJ., reference is made to a previous opinion in the same cause which decided this point. We learn that this opinion was written by *Doe,* J. (99 Briefs & Cases 701), but it has never been reported and does not appear to be on file. We therefore have no means of determining how far and under what circumstances it was thought by the court, as then constituted, that an obligation to pay alimony remained in force after the death of the husband, nor are we called upon to consider the question now. (See 1 R. C. L. Tit. Alimony, *ss.* 80-81.) If an order for the payment of alimony does survive the death of the payor, the power of the court to revise or modify the order ought in reason to persist and the statute above referred to (P. L., *c.* 287, *s.* 12) would no doubt be effective to accomplish this result.

In the absence of pending (P. L., *c.* 287, *ss.* 14, 15) or possible (P. L., *c.* 287, *s.* 29) divorce proceedings the superior court had no jurisdiction to appoint a custodian of minors as it attempted to do in this case, since the right of custody is a legal incident of guardianship, and the appointment of guardians is a matter within the exclusive jurisdiction of the probate court.

"He [a guardian] shall take care of the person and estate of his ward

...." P. L., c. 289, s. 3. "Every guardian shall have the custody and tuition of the minor, and the care and management of his estate, ..." P. L., c. 290, s. 18. "Every guardian of a minor shall inculcate habits of sobriety and industry in his ward, and may employ him in any suitable labor, or bind him out to labor, by a written contract, for a term not exceeding one year ..." P. L., c. 290, s. 19. The clear effect of these provisions is to give to a guardian a "superior right to the custody of the person of his ward." *Lessard* v. *Company*, 83 N. H. 576, 580; *Hutchins* v. *Brown*, 77 N. H. 105, 107.

We have recently held that the jurisdiction of the probate court to appoint testamentary trustees is in the first instance exclusive. *Rockwell* v. *Dow, ante*, 58. Similar considerations lead us to the conclusion that the jurisdiction of the probate court with reference to the appointment of guardians is also exclusive. The appointment and supervision of guardians are normal constituents of probate jurisdiction, and the statutory provisions with regard to guardians closely parallel those relating to executors, administrators and trustees. The probate court is clothed with full authority to appoint and remove guardians of minors. P. L., c. 290, ss. 1, 6; *Ib.*, c. 289, ss. 28, 29; *Ib.*, c. 293, s. 4. In exercising this power it is given very wide discretion. P. L., c. 290, ss. 3, 5, 6, 11, 15. All guardians, except guardians *ad litem*, are required to give bond "to the judge of probate," P. L., c. 289, s. 2. "All proceedings in relation to the property or estate of a person under guardianship shall be had in the court of probate of the county in which the guardian was appointed." P. L., c. 293, s. 10. Without further specific citation, it may be said that a clear legislative intent to commit the whole subject of guardianship to the jurisdiction of the probate court is discernible throughout chapter 289 of the Public Laws which deals with the general subject of guardian and ward, and chapter 290 which has specific reference to guardians of minors. We, therefore, conclude that it was the purpose of the legislature to confer upon the probate court exclusive original jurisdiction over the appointment of guardians—a conclusion which appears to be implicit if not expressed in the case of *Brooks* v. *Brooks*, 77 N. H. 547.

In the light of the foregoing discussion, it is plain that the dictum of *Bellows*, J. in *State* v. *Richardson*, 40 N. H. 272, 273, that "in this State a court of chancery has probably a like power, [to appoint guardians] notwithstanding the jurisdiction conferred upon the probate court to appoint guardians 'whenever there shall be occasion'," which was repeated in *Prime* v. *Foote*, 63 N. H. 52, 53, must be regarded as erroneous.

It is, of course, true that questions of custody may come before the superior court in *habeas corpus* proceedings, and in such a case the court must determine whether the child's welfare will be best promoted by a change in custody. *State* v. *Richardson, supra; Hanrahan* v. *Sears,* 72 N. H. 71; *White* v. *White,* 77 N. H. 26. Power to administer the summary and drastic remedy of *habeas corpus* does not, however, carry with it power to appoint guardians or permanent custodians, although temporary orders pending final action by the probate court may be made. *Stone* v. *Duffy,* 219 Mass. 178. The question of permanent custody, involving as it does careful investigation of the fitness of proposed guardians and the best interests of minors, is a matter with which the probate court is well qualified to deal, and the legislature has clearly indicated that it shall there be decided in the first instance.

The statute provides that "upon the death of either parent, the survivor shall be the sole guardian of the person of the child." P. L., c. 290, s. 4. The force of this provision was not affected by the original orders relating to custody made in the divorce proceedings. *White* v. *White, supra; Stone* v. *Duffy, supra.* In the absence of proceedings in the probate court the defendant is the natural and legal guardian of all her children, and *prima facie*, entitled to have the custody of them.

*Case discharged.*

All concurred.