Merrimack
No. 80-272

## HAROLD W. CASE

v.

## MARY McDAVID CASE (NOW KELLEY)

August 5, 1981

*Hatfield & Henderson P.A.*, of Hillsborough (*Leigh D. Bosse & a.* on the brief and *Mr. Bosse* orally), for the defendant.

*Gregory H. Smith*, acting attorney general (*Marc R. Scheer*, assistant attorney general, *& a.* on the brief and *Mr. Scheer* orally), for the State.

*Orr & Reno P.A.*, of Concord (*Mary Susan Leahy* on the brief and orally), as guardian ad litem for the children.

Bois, J. The questions of law transferred to us by the Superior Court (*Cann*, J.) arise out of the defendant's attempt to regain custody of her minor children from the department of welfare. As matters of first impression we must decide whether the defendant parent or the non-parent custodian of the children has the burden of proof and, further, what is the proper standard of proof. We also have before us the question whether the defendant can raise at the pending custody hearing the issue of adequate representation by counsel at a prior hearing.

The defendant, Mary McDavid Case (now Kelley), is the mother of two minor children, James R. McDavid and Martin L. Case; the plaintiff, Harold W. Case, is the father of Martin L. Case. In 1975 the Cases were divorced and they, along with the court-appointed guardian ad litem for the children, stipulated that "[t]he care and custody of the minor children James R. McDavid and Martin L. Case shall be entrusted to the State of New Hampshire, Division of Welfare." The stipulation further stated that "Mary M. Case and Harold W. Case enter into this stipulation with the express understanding that by signing this agreement, they are giving up the right of custody of said children and that they will not again be able to obtain custody unless the Division of Welfare should so agree or the Superior Court should so order."

On March 22, 1976, the defendant filed a petition to bring forward the original divorce decree, claiming now to be a suitable person to regain custody of the minor children. She alleged that there had been "a substantial change in circumstances," including her remarriage, the gainful employment of herself and her new spouse, the financial means to support the children, and the ownership of a seven-room house in Hillsboro. After a hearing in 1977 at which the defendant, who was represented by counsel, the guardian ad litem, and the division of welfare presented evidence, the Master (*Peter J. Bourque*, Esq.) recommended and the court ordered that "[p]ermanent custody of the minor children shall remain with the State of New Hampshire, Division of Public Welfare."

On August 20, 1979, the defendant filed a second petition to bring the matter forward, setting forth the same facts in support of her claim of changed circumstances as were contained in the first petition. She added, however, the allegations that "the Department of Welfare is an unfit custodian for the children, having knowingly neglected their proper supervision in disregard of their physical and emotional well being . . ." and that "she was improperly represented at the prior hearing in this matter by not being allowed to take the witness stand in aid of her cause and in refutation of statements against her." The State denied these allegations and moved to dismiss. Recognizing that the issues raised appeared to be of first impression, and that all of the interested parties intended to appeal an adverse ruling, the Court (*Cann*, J.), by a statement of interlocutory transfer without ruling, submitted the issues to this court.

The first questions transferred are who has the burden of proof in these circumstances and what is the proper standard of proof. The division of welfare and the guardian ad litem urge us to apply the standard enunciated in *Perreault v. Cook*, 114 N.H. 440, 443, 322 A.2d 610, 612 (1974), by which "[t]he relationship established by the custody award should not be disturbed unless the moving party demonstrates that the circumstances affecting the welfare of the child have been so greatly altered that there is a strong possibility the child will be harmed if he continues to live under the present arrangement." The defendant argues that the division of welfare as custodian of the children has the burden of proving either beyond a reasonable doubt, *State v. Robert H.* _____, 118 N.H. 713, 393 A.2d 1387 (1978), or by clear and convincing evidence, *In re Brenda H.*, 119 N.H. 382, 402 A.2d 169 (1979), that the mother of the children should be denied custody.

We note that shortly after our decision in *In re Brenda H. supra,* the Governor signed into law House Bill 831, Laws 1979, ch. 361, which is now codified in RSA ch. 169-B ("Delinquent Children") (Supp. 1979) and ch. 169-C ("Child Protection Act") (Supp. 1979). *See generally* Harkaway, Bianco, Leidinger & Barry, *New Hampshire Juvenile Justice Code of 1979: An Overview,* 21 N.H.B.J. 45, 45–49 (1980). In RSA 169-C:13 (Supp. 1979) the legislature stated that "[t]he petitioner has the burden to prove the allegations in support of the [neglect] petition by a preponderance of the evidence." *See* 21 N.H.B.J. at 70 n.67.

■ Although the principles delineated in these prior cases and the standard set forth in RSA 169-C:13 (Supp. 1979) are instructive to any discussion involving the rights of parents and children, the circumstances and relationships involved in these cases and those to which RSA 169-C:13 (Supp. 1979) applies differ from the facts before us. In *Perreault* the court applied the welfare-of-the-child standard to a situation in which a parent of a child was seeking a modification of a custody award by which the child was in the custody of the other parent. The beyond-a-reasonable-doubt standard imposed on the division of welfare in *Robert H.* _____ arose in the context of a termination proceeding. Furthermore, the clear-and-convincing standard of proof placed on the State in *Brenda H.,* now superseded by the preponderance-of-the-evidence standard set forth in RSA 169-C:13 (Supp. 1979), applied to child-neglect proceedings under RSA ch. 169 (current version at RSA ch. 169-C (Supp. 1979)). In the case at bar, however, one parent, who was a party to a stipulation that entrusted the custody of her minor children to the State, now seeks to have the superior court reinstate custody in her because she claims to be suitable to take on the responsibilities of parenting and because the State allegedly is neglecting the supervision of the children.

> "The Court has frequently emphasized the importance of the family. The rights to conceive and raise one's children have been deemed 'essential,' . . . 'basic civil rights of man,' . . . and '[r]ights far more precious . . . than property rights.' . . . 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' . . . The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, . . . the Equal Protection Clause of

the Fourteenth Amendment, . . . and the Ninth Amendment."

*Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (citations omitted). "The family and the rights of parents over it are held to be natural, essential, and inherent rights within the meaning of New Hampshire Constitution, part I, article 2." *State v. Robert H.* ————— , 118 N.H. at 716, 393 A.2d at 1389; *see In re Irene W.*, 121 N.H. 123, 125, 427 A.2d 24, 26 (1981). *See generally* Curtis, *The Psychological Parent Doctrine in Custody Disputes Between Foster Parents and Biological Parents*, 16 COLUM. J. OF L. & SOC. PROB. 149, 158–59 (1980).

 In RSA 458:17 (Supp. 1979) the legislature provided that "[i]n making any order relative to . . . custody [upon divorce], the court shall not give any preference to either of the parents of the children because of the parent's sex and the court may take into consideration any preference shown by . . . [the] children." Furthermore, "[t]he paramount and controlling consideration [in awarding custody] is the overall welfare of the children involved." *Del Pozzo v. Del Pozzo*, 113 N.H. 436, 436, 309 A.2d 151, 152 (1973); *see Brauch v. Shaw*, 121 N.H. 562, 569, 432 A.2d 1, 5 (1981); *Chasan v. Mintz*, 119 N.H. 865, 867, 409 A.2d 787, 788 (1979). Although the circumstances in this case do not involve an initial determination of custody, the natural parent's attempted modification of a custody decree by which the child was placed in the custody of the State raises a presumption in favor of the constitutionally inherent rights of the parent. We conclude, however, that unlike in parental rights termination or neglect and abuse cases, the moving party here, because she was a party to an unambiguous and conclusive stipulation entrusting custody to the State, must bear the burden of proof.

 The presumption in favor of parental custody leads us to conclude that the *Perreault* standard would place too harsh a burden on the moving party in cases when the moving party is a parent seeking to obtain custody from a non-parent. Accordingly, in such cases the parent need not prove that "the circumstances affecting the welfare of the child have been so greatly altered that there is a strong possibility the child will be harmed if he continues to live under the present arrangement." *Perreault v. Cook*, 114 N.H. at 443, 322 A.2d at 612. Rather, the mother must prove that she is capable of caring for her child and that no harm will befall the child if it is in her custody. *Cf.* RSA 169-C:23 (Supp.

1979). Because this case involves the attempted modification of a custody decree and not the finality of the termination of parental rights, *State v. Robert H.* ——————, 118 N.H. at 716, 393 A.2d at 1389, and, moreover, because the burden of proof is on the parent and not on the State, the mother must satisfy her burden by clear and convincing evidence, not by evidence beyond a reasonable doubt.

■ ■ The second question before us is whether the defendant may raise the issue of whether she was properly represented by counsel at the 1977 hearing on the motion to bring forward the divorce decree. The defendant raises this issue to seek the introduction of evidence of changed circumstances predating the 1977 hearing at the pending hearing on the attempted modification of the custody decree. Specifically, the defendant alleged in her August 20, 1979, petition to bring forward that:

> "she was improperly represented at the prior hearing in this matter by not being allowed to take the witness stand in aid of her cause and in refutation of statements against her."

Although the defendant has not brought a motion for a new trial under RSA ch. 526, her petition to bring forward may be construed as such a motion. *See Magoon v. New Eng. Power Co.*, 103 N.H. 366, 367, 172 A.2d 366, 367 (1961); *cf. Bricker v. Sceva Speare Hosp.*, 115 N.H. 709, 711, 350 A.2d 623, 625 (1975). According to RSA 526:1, "[a] new trial may be granted in any case when through accident, mistake or misfortune justice has not been done and a further hearing would be equitable." Consequently, if the defendant meets the standard enunciated in RSA 526:1, she may be entitled to present evidence not introduced at the 1977 hearing. We note, however, that although this evidence of prior circumstances may be helpful to the court's determination of custody, under the standard enunciated above, the *present* circumstances of the parties are the most relevant. *See Brauch v. Shaw*, 121 N.H. 562, 574–75, 432 A.2d 1, 8 (1981).

*Remanded.*

DOUGLAS, BROCK and BATCHELDER, JJ., did not sit; the others concurred.