Rockingham
No. 82-506

MICHAEL J. MATTLEMAN

v.

MARLENE S. BANDLER

June 7, 1983

*Joseph L. Hamilton*, of Salem, by brief and orally, for the plaintiff.

*Soule, Leslie, Bronstein & Zelin*, of Salem (*Barbara F. Loughman* on the brief and orally), for the defendant.

DOUGLAS, J.  The issue raised in this interstate child custody dispute is whether New Hampshire has jurisdiction to modify the parties' divorce decree regarding custody of their two children. We hold that the Superior Court (*Bean*, J.) erred in assuming jurisdiction to grant temporary custody of the parties' children to the plaintiff. We vacate the superior court's order and dismiss the plaintiff's custody-modification petition.

The plaintiff, Michael Mattleman, and the defendant, Marlene Bandler, were divorced in Maryland in September 1979. Custody of the parties' two minor children was granted to the defendant, and the plaintiff was ordered to pay child support. Both parties subsequently remarried, the plaintiff moving to New Hampshire and the defendant moving to Florida with her second husband and the two children in April 1980.

In April 1982, the defendant petitioned a Florida court to recognize the Maryland divorce decree and to increase child support. At this time, the parties were negotiating a possible change in custody of the children from the defendant to the plaintiff. It is undisputed, however, that no formal agreement was reached for a change of custody before the parties' two children came to New Hampshire on June 13, 1982, to visit their father for the summer. The parties also agree that the Maryland custody decree had never been modified by a court and was still in effect when the children came to New Hampshire for their summer vacation.

At the end of the summer, the plaintiff failed to return the parties' two children to Florida and filed a petition in Rockingham County Superior Court to modify the Maryland custody decree for the purpose of obtaining custody of the children. In response, the defendant filed a petition for summary enforcement of the Maryland decree,

pursuant to RSA 458-A:13 (Supp. 1979), and moved that the plaintiff's custody-modification petition be dismissed for lack of jurisdiction under the Uniform Child Custody Jurisdiction Act, RSA chapter 458-A (Supp. 1979).

At a hearing on August 31, 1982, on the defendant's motion to dismiss, both parties testified concerning the circumstances surrounding the children's visit to New Hampshire that summer. The plaintiff testified that he had not returned the children to Florida because it was his "understanding" that custody was being transferred to him. On September 2, 1982, the superior court entered a temporary decree, based on a Master's (*Douglas R. Gray*, Esq.) recommendation, assuming jurisdiction because "the children have *sufficient contact* with the State of New Hampshire and . . . there *may be* substantial evidence concerning the children's present or future care or future relationships." (Emphasis added.) *See* RSA 458-A:3, I(b) (Supp. 1979). A guardian ad litem was appointed for the apparent purpose of investigating "whether [the court] shall continue jurisdiction for a hearing on the merits," and the plaintiff was granted temporary custody of the children "solely for purposes of school registration and medical necessities."

After the defendant filed a motion to reconsider and set aside the temporary decree, a conference was held in chambers at which the guardian ad litem submitted a report based upon her investigation until that time. On September 30, 1982, the court denied the defendant's motion to reconsider and set aside the decree. The court continued to assume jurisdiction on the same basis as the temporary decree and ordered the guardian ad litem to continue her investigation. Although no express ruling was made, the court in effect denied the defendant's petition to enforce the Maryland custody decree and to dismiss the plaintiff's petition to modify custody. The defendant then took this interlocutory appeal.

While this appeal was pending, the Florida court where the defendant had initiated her action to increase child support issued an order on December 22, 1982, entering the Maryland custody decree as a judgment of that court and affirming custody of the children in the defendant. Stating that its order related back to the defendant's initial April 1982 child-support petition, the Florida court declared that the plaintiff had

> "unlawfully and wilfully removed the children from the jurisdiction of this Court by refusing to return the children to the State of Florida and is in violation of the Custody Order entered by Maryland and is in violation of the Uniform Act [Fla. Stat. §§ 61.1302–61.1348 (1981)] . . . ."

The defendant then filed a motion here in New Hampshire to stay these proceedings and to transfer the case to Florida. No action has been taken on the defendant's motion pending the outcome of this appeal.

Jurisdiction to modify a custody decree of another State is governed by RSA 458-A:14 (Supp. 1979), which provides in pertinent part:

> "If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree *and* (b) the court of this state has jurisdiction."

(Emphasis added.) The parties agree upon the validity of their Maryland divorce decree granting custody of the parties' minor children to the defendant. While Maryland would no longer appear to have jurisdiction under the Act, New Hampshire may not assume jurisdiction to modify the custody decree on that basis alone. Section fourteen of the statute also requires this State to have jurisdiction, as determined under section three. RSA 458-A:3, I (Supp. 1979) thus provides:

> "A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree only when:
>
> (a) This state (1) is the home state of the child at the time of commencement of the custody proceeding; or (2) has been the child's home state within 6 months before commencement of such proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
>
> (b) It is in the best interest of the child that a court of this state assume jurisdiction because (1) the child and his parents, or the child and at least one contestant, have a *significant connection* with this state, and (2) there *is* within the jurisdiction of the court *substantial evidence* concerning the child's present or future care, protection, training, and personal relationships; or
>
> (c) The child is physically present in this state and (1)

the child has been abandoned or (2) it is necessary in an emergency to protect the child . . . ."

(Emphasis added.)

The ultimate question for decision in this case is not whether the New Hampshire court properly exercised its concurrent jurisdiction with Florida to modify the Maryland custody decree, *see* RSA 458-A:6 to :8 (Supp. 1979), but whether the trial court correctly determined in the first instance that jurisdiction attached. We hold that the court erroneously concluded that it had jurisdiction under RSA 458-A:3 (Supp. 1979).

■ It is clear that the court could not obtain "home state" jurisdiction over the custody-modification action because the parties' minor children had not resided in New Hampshire for six consecutive months before the plaintiff filed his petition to obtain custody. *See Brauch v. Shaw*, 121 N.H. 562, 571–72, 432 A.2d 1, 6 (1981). Therefore, jurisdiction must have rested upon some alternate provision of RSA 458-A:3 (Supp. 1979).

■ The master erred as a matter of law when he attempted to base jurisdiction upon paragraph I(b) of RSA 458-A:3 (Supp. 1979). Contrary to the master's recommendation, that provision requires that the child have a "*significant* connection," and not merely a "sufficient contact" with this State. Additionally, the master was required to find that "there *is* within the jurisdiction of the court substantial evidence" concerning the child's present or future care or future relationships. It was not legally sufficient for the master to have based his temporary custody recommendation on the fact that there "may be" such evidence within this State.

■■ Even assuming that the master had applied the proper legal standard, we believe that there was a paucity of evidence adduced at the hearing before him to satisfy either the "significant connection" or the "substantial evidence" prong of this jurisdictional test. To the contrary, the children's connections with New Hampshire were limited to those which developed during the two months that they were here, with the custodial parent's consent, visiting their father. Whatever evidence would be necessary to support a change of custody can be found in Florida, where the children had lived with the defendant for two years preceding the plaintiff's petition, and not in New Hampshire. As we recently stated:

"The Uniform Child Custody Jurisdiction Act is based on the notion that usually the best interests of a child are served by having a custody determination in the jurisdic-

tion . . . where the facts concerning the custody of the child are most readily available to the court."

*Brauch v. Shaw*, 121 N.H. at 571, 432 A.2d at 6; *see* C. DOUGLAS, 3 NEW HAMPSHIRE PRACTICE, FAMILY LAW § 273, at 268 (1982).

■■ The drafters of the Uniform Act were aware that a court might interpret the "significant connection" basis for jurisdiction too liberally and thereby frustrate the underlying purpose of the Act "to limit jurisdiction rather than to proliferate it." UNIFORM CHILD CUSTODY JURISDICTION ACT commissioners' note accompanying § 3 (1968), 9 U.L.A. 124. Accordingly, the drafters warned that the "significant connection" jurisdiction provision "perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1." *Id.*; *see* RSA 458-A:1 (Supp. 1979). Those purposes include discouraging unilateral removal or retention of a child from his present home and preventing relitigation that shifts the child from state to state. *Brauch v. Shaw*, 121 N.H. at 571, 432 A.2d at 6; RSA 458-A:1, I(a), (e), (f) (Supp. 1979). To allow the New Hampshire courts to assert jurisdiction in this case would undermine the very purposes for which the statute was enacted. *See generally* Osterman, *Child Custody in New Hampshire: The Uniform Child Custody Jurisdiction Act*, 23 N.H.B.J. 101 (1982).

■■ The statute would have allowed jurisdiction for the temporary custody decree to be founded upon abandonment of the child or an emergency to protect the child. RSA 458-A:3, I(c) (Supp. 1979); *see Cartelli v. Martin*, 121 N.H. 296, 298, 428 A.2d 1243, 1245 (1981). Nevertheless, the master made no such finding of abandonment or emergency, nor could he on this record, but attempted to base jurisdiction on the "significant connection" and "substantial evidence" criteria of paragraph I(b). The master's erroneous determination was compounded when, based upon the guardian ad litem's initial report, he continued jurisdiction for the purpose of allowing further investigation to locate "substantial evidence" of the children's present and future care. *See* RSA 458-A:3, I(b)(2) (Supp. 1979).

The result of this continued exercise of improper jurisdiction has been that, as of the time of oral arguments in this case, the defendant, the custodial parent, has not been able to see her children since June 1982, when they left Florida to visit their father in New Hampshire for the summer.

■ Whatever "understanding" the plaintiff may have had regarding his children's custody, it was error for the trial court to

have assumed jurisdiction in this case to award temporary custody of the children to him. As one federal appellate court has noted:

> "[A] parent with whom a child is visiting in another jurisdiction ordinarily should not be permitted, *except in clearly compelling circumstances*, to use the occasion to seek to divest the other parent of a judicially decreed right of custody. To permit this would place a premium on the abuse of the right of visitation and make it difficult for parties to agree on the free movement of the child from one parent to the other."

*Bergen v. Bergen*, 439 F.2d 1008, 1015 (3d Cir. 1971) (emphasis added). Masters and judges must use extreme caution in granting relief at the end of a summer visitation that will disrupt a child's schooling, as has happened here.

As mentioned previously, no such compelling circumstances were found by the master to have existed in this case to satisfy the statutory standard of abandonment or emergency jurisdiction. We cannot accept the plaintiff's assertion that this court can simply ignore the basis for the master's recommendation and, as a trier of fact, find support in the record for jurisdiction based upon abandonment or emergency.

We conclude that the master erred in finding jurisdiction in this case and in not granting the defendant summary enforcement of the Maryland custody decree. Accordingly, we vacate the trial court's temporary custody decree and order custody of the children to be returned to the defendant pursuant to the decree of the Florida court. Any action the plaintiff may wish to pursue to obtain custody of the parties' two children must be brought in Florida, their home State.

Furthermore, we remand the case to the superior court for the limited purpose of determination and assessment of necessary travel and other expenses, including attorney's fees, against the plaintiff, pursuant to RSA 458-A:15, II (Supp. 1979). *See Harvey v. Harvey*, 244 Ga. 199, 200, 259 S.E.2d 456, 456–57 (1979).

*Vacated and remanded.*

All concurred.